IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EL DORADO IRRIGATION DISTRICT,

    Plaintiff,                          No. CIV S-03-949 LKK GGH

    vs.

TRAYLOR BROS., INC., et al.,

    Defendants.                      ORDER (after in camera review)

_____/

        On April 7, 2005, the court ordered El Dorado Irrigation District (EID) to present for in camera review production of those documents which EID withheld as privileged and related to Traylor Bros.' (TBI) subpoena on Owen Engineering & Management Inc. (Owen).

        Owen contracted with EID for the purpose of restoring (or building anew) Spillway 20. The precise function of the spillway is not germane to this discovery dispute. However, EID asserts that it had to restore the Spillway in order to assist in its operation of the water tunnel (Mill-Bull Tunnel) at the heart of this lawsuit—in essence a mitigation of damages measure. EID states that it would not have had to restore the Spillway if the Tunnel had been constructed properly. TBI counters with its belief that EID had plans, regardless of the Tunnel operation, to restore or build anew the Spillway that it may have been ill advised to destroy in the first place.

        At hearing, the undersigned mentioned, with tongue only half-in-cheek, that it appeared everyone who did business with EID automatically became a litigation consultant.

And, indeed, the discovery controversy centers about EID's contention that Owen was its "litigation consultant." However, the undersigned stated that Owen could only be a litigation consultant if EID had specifically retained them to consult on some aspect of the lawsuit. EID's mere hiring of a contractor to assist in mitigation of damages, i.e., to do the planning, design and/or construction of Spillway 20, did not turn that contractor into a litigation consultant.

The documents presented by EID confirm the court's impression for the most part. Owen was simply a hired contractor to assist EID's mitigation of harm efforts much like a physical therapist might be hired only to get an injured person back to work.

When Owen was hired, EID gave instructions to Owen that it was to hold all documents in confidence. However, at the start, that was the sum total of EID's evidence that Owen was supposed to be a litigation consultant. If only it were so easy to unilaterally manufacture privileged documents—just tell the hired contractor to keep them confidential. In fact, at one point, Owen *was* asked to look at a TBI/URS proposal to renovate the Spillway; Owen quasi-complained in October 2004 that "as you are aware, the review is not in the scope of our engineering agreement." (Document 83) (This document will be produced as it does not relate privileged information). It was not until November 12, 2004, that documentation exists demonstrating that Owen was "on board" as a litigation consultant. (Document 81). Thus, documents that Owen generated or received prior to this time, or on a basis different than review of TBI proposals, cannot possibly be immunized from discovery by a consultant status. Although it is not completely clear, it does appear that EID and Owen did set up a separate account for review of TBI information. To this extent, Owen does have the capacity of a litigation consultant, and it could easily separate the two functions—contractor and consultant.

The privilege log and associated documents can be roughly broken into three categories, (1) a dispute which occurred between builders of the Spillway and proximate homeowners over noise; (2) the negotiations, meetings, investigation and environmental compliance for Spillway 20 reconstruction involving Owen and EID, (3) Owen's review work

with EID regarding the TBI proposal to do the Spillway 20 work.  Only the first and last category are privileged under attorney-client or work product.

California law, the law which governs privilege matters in this diversity litigation, fully supports the undersigned's viewpoints.  First, privileges in California law are narrowly construed in California as their invocation tends to impair the search for the truth.  McKesson HBOC, Inc v. Superior Court,  115 Cal. App.4th, 1236, 9 Cal. Rptr.3d 812, 817 (2004).  And, the party claiming a privilege shoulders the burden of showing that the evidence it seeks to suppress falls within the terms of an applicable statute.  HLC Properties, Ltd. v. Superior Court, 35 Cal.4th 54, 59, 24 Cal.Rptr.3d 199, 202 (2005).

Second, simply because counsel's name is attached to a document in some capacity does not render it privileged.

> The privilege does not protect "independent facts related to a communication; that a communication took place, and the time, date and participants in the communication."  (State Farm Fire & Casualty Co. v. Superior Court (1997) 54 Cal.App.4th 625, 640, 62 Cal.Rptr.2d 834.)  Further, the privilege "does not protect disclosure of underlying facts which may be referenced within a qualifying communication" (id. at p. 639, 62 Cal.Rptr.2d 834), and it does not extend to individuals who are no more than witnesses to the matter at issue in the litigation. (Martin v. Workers' Comp. Appeals Bd. (1997) 59 Cal.App.4th 333, 345, 69 Cal.Rptr.2d 138.) "'Knowledge which is not otherwise privileged does not become so merely by being communicated to an attorney....'  While the privilege fully covers communications as such, it does not extend to subject matter otherwise unprivileged merely because that subject matter has been communicated to the attorney.'" (Greyhound Corp. v. Superior Court (1961) 56 Cal.2d 355, 397, 15 Cal.Rptr. 90, 364 P.2d 266.)  "[T]ransmission alone, even where the parties intend the matter to be confidential, cannot create the privilege if none, in fact, exists." (Suezaki v. Superior Court (1962) 58 Cal.2d 166, 176, 23 Cal.Rptr. 368, 373 P.2d 432.) Documents that are independently prepared by an attorney "do not become privileged communications ... merely because they are turned over to counsel." (Wellpoint Health Networks, Inc. v. Superior Court (1997) 59 Cal.App.4th 110, 119, 68 Cal.Rptr.2d 844 (Wellpoint).)

\\\\\

\\\\\

2,022 Ranch L.L.C. v. Superior Court, 113 Cal. App.4th 1377, 1388, 7 Cal. Rptr.3d 197, 205 (2003).[1]

Third, "It is settled that the attorney-client privilege is inapplicable where the attorney merely acts as a negotiator for the client, gives business advice or otherwise acts as a business agent." Chicago Title Ins. v. Superior Court, 174 Cal. App.3d 1142, 1151, 220 Cal. Rptr. 507, 514 (1985). The courts have found that the attorney-client privilege did not apply without qualification where the attorney was merely acting as a negotiator for the client (Montebello Rose Co. v Agri. Labor rel. Brd, 119 Cal.App.3d 1, 32-35, 173 Cal.Rptr. 856, 873-875 (1981), or merely gave business advice (Estate of Perkins v. Bigelow, 195 Cal. 699 710, 235 P. 45(1925). In addition, it has been held that the work product privilege does not apply when an attorney merely acts as a business agent for a client by conveying the client's position to a contracting party. Watt Industries v. Superior Court, 115 Cal.App.3d at 802, 171 Cal.Rptr. 503 (1981).

Having in mind the above principles, the court orders that the documents related to the noise complaint remain undisclosed on account of their work product nature. For part of the documents listed on the privilege log, EID was taking action to ward off possible homeowner controversies, even lawsuits, in connection with the re-building of Spillway 20. The documents were created, and actions referenced therein, in anticipation of possible litigation. Aside from

---

[1] In the federal case of In re Gabapentin Patent Litigation, 214 F.R.D. 178, 186 (2003), the common sense rule concerning business communications with counsel was stated even more clearly applicable to the instant situation: "Non-privileged communications or documents forwarded or Cc'd to an attorney: If documents are created for routine business purposes, by non-attorneys, they do not fall within the purview of the work product privilege. Forwarding an e-mail or other such document that fits this description to an attorney does not transform it into the attorney's work product-i.e. a reflection of his 'mental impressions,' or 'legal strategy,' and such documents are not 'created in anticipation of litigation'. Neither can it be said that communications between clients, unrelated to legal issues or advice, fall under the attorney client privilege. Including an attorney on the distribution list of an interoffice memo, Cc'ing numerous people who are ancillary to the discussion, one of whom happens to be an attorney, or forwarding an e-mail several times until it reaches an attorney does not amount to 'attorney client communication.'"

that, the relevancy of such documents to the current lawsuit is highly questionable. Thus, documents on the privilege log designated 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, 15, 19, and 20 may remain undisclosed.[2]

The court comes to an opposite conclusion for documents 1, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 47, 48, 49, 50, 51, 52, 53, 54, 57, 58, 59, 60, 61, 65, 66, 67, 73, 75 76, 83, 84, 86, 87, 88, 89, 90, 91.

These documents pertain to the investigation, technical research, progress reports, design information and information regarding what might satisfy governmental agency concerns. The latter numbers also pertain to how Owen should respond to TBI's subpoena because of *contractual* concerns. These documents reflect only contractual back-and-forth between or among Owen and EID and other interested persons. That EID counsel was involved (most of the time simply as a "cc" recipient) does not imbue this contractual relationship with a "litigation consultant" overlay. Nor did EID counsel create any attorney client relationship with Owen. At all times EID counsel were EID counsel. Moreover, although the information received or given to third party Owen may have been useful in some sense to EID's counsel's advice to EID in anticipating potential legal snafus, e.g., regulatory concerns, the type of information arriving or being disseminated was not privileged, and did not become so simply because EID's counsel was copied or even a sender or primary addressee. None of these documents reflect privileged information, i.e., documents which request advice from or give information to an attorney *who has an attorney-client relationship with the sender/receiver.* Nor will the court absurdly paint with such a broad brush that every contact a lawyer has with outside contractors is deemed for the benefit of his client such that the client-lawyer and contractor are all working in a confidential setting. If such were the case, all documents associated with every business contract could be
\\\\\

---

[2] The court assumes that documents initially listed as privileged, but were then labeled "produced" were indeed produced. Those documents are not listed here.

absolutely shielded because an attorney was placed on the "cc" list or attended a meeting.[3]

The court finds the following documents shielded from discovery because of work-product concerns. These documents reflect Owen's advice (including handwritten notes on TBI documents made either by Owen or by counsel) concerning TBI/URS proposals to reconstruct Spillway 20. Documents 77, 78, 79, 80, 81, 92, 93, 94, 95, 96.

*Conclusion*

EID shall disclose and withhold Owen documents as set forth above. The disclosures shall take place within fifteen days of the filed date of this order. EID shall make arrangements to pick up the in camera documents

TBI's Motion for sanctions is denied as EID was sufficiently justified, albeit partially in error, in this discovery dispute.

IT IS SO ORDERED.

DATED: 4/20/05

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U. S. MAGISTRATE JUDGE

GGH:gh:035
EID949.ord

---

[3]This includes documents where the contractor is asking for advice from EID counsel concerning how to respond to a subpoena because of the *contractual* requirement for confidentiality.