IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EL DORADO IRRIGATION DISTRICT,

    Plaintiff,                       No. CIV S-03-0949 LKK GGH

    vs.

TRAYLOR BROS., INC., et al.,       MEMORANDUM AND ORDER/

    Defendants.                FINDINGS & RECOMMENDATIONS

_____/

*Introduction and Summary*

        On September 8, 2005, the court heard Traylor Brothers (TBI) Motion to Compel, Motion to Compel discovery Cutoff, and for Terminating/Monetary Sanctions. At hearing the court issued oral rulings on all matters at issue save one, including a ruling that no terminating sanctions would be recommended. The court left open the subject of monetary sanctions.

        As set forth in the Joint Statement, several issues were to be decided:

        1. Whether audio tapes, meeting minutes and notes of an October 3, 2002 meeting were not produced in violation of a previous court order;

        2. Whether e-mails and other electronic information were produced from MWH;

        3. Whether EID produced the EID/MWH "tolling agreement" and drafts;

\\\\\

1

4. Whether EID produced an unedited video of the January 2004 tunnel inspection;

5. Whether EID produced documents in connection with Request No. 6 in an unorganized, unsegregated fashion;

6. Whether EID produced its complete Job Cost Accounting Data;

7. Whether TBI should be able to take depositions after the established cutoff date for percipient witnesses;

8. Whether sanctions, including terminations sanctions, should be imposed.

*Discussion*

A. <u>Summary of Court Rulings Made on Issues 1-7</u>

Issue 1 involved a meeting of EID's then litigation counsel, EID personnel and MWH personnel. The meeting would have been privileged but for the court's previous "waiver order" (July 6, 2005). It appears from some evidence that EID planned to have audio taped this meeting; however, other evidence pointed to the fact that minutes were being recorded by one person (Karen Waddell). However, early on in the meeting, counsel, previously unaware that this litigation meeting was being recorded, discovered that Waddell was taking notes and ordered that such note taking cease. He told her to scrap the notes that had already been taken. It remained unclear at hearing whether an audio recording had ever been started, but EID represented at hearing that no tapes whatsoever existed. The undersigned found that no notes or recordings were required to be kept of the meeting, that counsel was entitled to stop the note taking, but that counsel probably acted inappropriately in ordering formally created notes scrapped (as opposed to merely being kept in a privileged status). However, the court also found that such a destruction order from counsel, made at a time when the notes were not at issue, and at a time when the court's much later "waiver" ruling could not have been predicted, was fairly

\\\\\

\\\\\

innocuous, and paled in comparison to TBI's former general counsel's habit of routinely destroying all privileged and unprivileged material.[1]

The next issue, #2, dealt with MWH e-mails and attachments. While the production of such was initially performed with EID snafus, i.e., the attachments to e-mails were not printed out, EID brought a complete print-out of all requested documents (much less than TBI previously advertised), and the court found the issue resolved. The snafus are pertinent to the sanctions discussion below.

With respect to Issue 3, EID (finally after the motion was filed) produced the tolling agreement and all drafts in its possession. The issue was found resolved. However, the belatedness of the production is relevant to the sanctions issue.

Much discussion was had concerning the "unedited" video of the January 2004 tunnel inspection tour (Issue #4). However, in sum, the unedited video is the same as the edited video. EID represented that no other videos existed as far as EID was aware. If there were other videos, MWH would have them, but inquiry made to MWH indicated that no other videos existed.

Issue # 5 involved the non-segregated production. The court found and finds that the documents were not segregated as to category as called for by discovery rules, and that TBI suffered cost prejudice as a result. The remedy for such prejudice is set forth below.

The next issue (# 6) involved EID cost data pertinent to the construction costs of the tunnel at issue, and hence, certainly pertinent to claimed costs for damages and counterclaims for damages. As the court stated at hearing: "it seems like keystone cops to a degree," Transcript at 31, on the part of EID. One witness (Korkowski) testified that there was a special

---

[1] The extent to which litigating counsel must retain all notes taken is not clear. For example, must counsel retain drafts of every pleading, scratch notes of every phone call, and the like? The undersigned doubts it. On the other hand, work product such as a recorded witness interview is evidence and may well be ordered produced at a later time. The issue here falls somewhere in between.

3

account (9904H) to track costs EID associated with TBI's performance, or mis-performance. Then, EID through its counsel, informs TBI on a number of occasions that no special, specific account exists and that the excess tunnel costs are comingled in an account relating generally to the project. EID promises TBI that it can have all the cost accounting data (although this computerized information may be hard to decipher). Next, EID retracts its retraction, and informs TBI that it does indeed have a separate account, but that it cannot represent that the account at issue tracks costs associated with EID's claims. At hearing, EID conceded that Korkowski's deposition was a "person most knowledgeable" deposition concerning EID's damages in this case. The parties agreed at hearing that EID would produce, at TBI's cost, the entire printout for Account Number 9904H in a format that was as readable as possible.

Finally, due to the resolutions of issues at the hearing in this matter, the court found at hearing insufficient reason to tinker with the set dates in this case (Issue #7).

B. Appropriate Sanctions

    1. *No Recommendation Will Be Made to Strike EID's Complaint*

Preclusion or terminating sanctions are authorized only in "extreme circumstances" of violations "due to willfulness, bad faith, or fault of that party." U.S. v. Kahaluu Const., 857 F.2d 600. 603 (9th Cir. 1988); see also Commodity Futures Trading Comm. V. Noble Metals Intern., Inc., 67 F.3d 766, 770 (9th Cir. 1995) (affirming the standard and upholding preclusion sanction in egregious circumstances).[2] Bad faith does not require actual ill will; substantial and prejudicial obduracy may constitute bad faith. B.K.B. v. Maui Poliuce Dept., 276 F.3d 1091, 1108 (9th Cir. 2002). While it is not mandatory that a preclusive sanction be preceded by a warning or lesser sanctions, Sigliano v. Mendoza, 642 F.2d 309, 310 (9th Cir.

---

[2] See also Fjelstad v. American Honda Motor Co., 762 F.2d 1334, 1338 (9th Cir. 1985) ("'where the drastic sanction of dismissal...[is] imposed...the range of discretion is narrowed and the losing party's non-compliance must be due to willfulness, fault, or bad faith,'" quoting Sigliano v. Mendoza, 642 F.2d 309, 310 (9th Cir. 1981); Henry v. Gill Industries, 983 F.2d 943, 946, 948-49 (9th Cir. 1993) (reviewing Rule 37 dismissal under multiple factors including willfulness, bad faith or fault).

4

1981), generally, the drastic remedy of claim or case preclusion will not be reached absent such forewarning.

Although EID's conduct here can be characterized as obduracy in that too often the discovery required is not produced or determined to be not in existence until the appropriate response is "dragged out of it" in a motion proceeding, <u>see below</u>, the conduct has not risen to the level where the court could characterize such conduct as sufficiently substantial, or that TBI has been significantly prejudiced in terms of preparation of its case such that dismissal of the complaint is warranted. TBI's urgent assertions of document destruction (the meeting notes) are litigation hyper-ventilations when viewed in their proper context. The court does not find from the current presentation that its previous orders have been flouted in a sufficiently significant sense. Nor, in a case of this magnitude in terms of discovery volume, has EID's conduct risen to the level of deliberately and significantly obstructive when viewed as a whole. Finally, TBI must realize that to a certain extent, poor damages preparation or discovery disclosure, or even "hiding the ball" pretrial will taint EID's trial presentations. The undersigned is confident that TBI will not be shy about raising appropriate objections at trial to "just discovered" critical information or nearly complete reorganizations of its prior deposition testimony on the part of EID.

The undersigned does not find preclusion or terminating sanctions to be justified. This case should be determined on its merits, and the court remains confident that a merits determination can and will be made. However, as he did at hearing, the undersigned warns both parties that the court's patience is running thin at this point. More resources are being devoted to this case than should be necessary. The parties have been warned that preclusion sanctions could be issued for future misconduct.

2. <u>Monetary Sanctions</u>

Under Fed. R. Civ. P. 37 (a)(2) and 37(b)(2), the court is required to impose monetary sanctions upon the party whose pre-motion or motion position has not been substantially justified. "Substantial justification should not be assessed in a technical sense, but

5

in cases where malfeasance or misfeasance has caused the opposing party unnecessary expenditures of time and resources." No one desires litigation to be a series of court imposed punishments for every mistake (litigation is painful and expensive enough already); on the other hand, discovery cannot be permitted to degenerate into a process of passive-aggressive compliance with discovery obligations, or brinkmanship with one's opponent, i.e., not initially producing a discovery response that should be initially produced in order to see if the opposing party will become exhausted in its discovery compliance efforts. Nor should the court tolerate a significant amount of carelessness in discovery obligation compliance because one party's carelessness is another party's cost. The meet and confer process, critical to narrow discovery disputes, and which are required by the rules, should not be interpreted as an invitation to be initially stubborn or careless, nor used as a means by which discovery timeliness can be unilaterally extended. In other words, ultimate, begrudging compliance will not immunize a party from sanctions.

For this motion, the court does not find EID totally justified or unjustified. EID legitimately opposed the motion with respect to the notes "destruction" issue and the "unedited video" issues. The remaining issues are another matter. While not rising to the level of obduracy required for preclusion or termination sanctions, EID's conduct in the remaining matters is at best carelessness which could have been avoided, and carelessness which impacted TBI in a prejudicial way. The court will not repeat all of its observations above. Suffice it to say that a person designated as "knowledgeable" for a certain topic has an obligation to make sufficient inquiry to be truly knowledgeable; obviously important tolling agreements and e-mail attachments need to be produced when initially requested, and documents should not be produced in a disorganized fashion with the inevitable imposition of cost-to-organize on one's opponent. EID was at least careless in these regards, necessitating a lengthy discovery compliance process which did not obtain results in certain specifics until the eleventh hour.

\\\\\

Attorney Budwig has claimed that it paid its copy service $3,000.00 to copy the documents produced in response to Request No. 6. He says that this expense has "been rendered largely obsolete" because the documents were not produced in an organized fashion. The court is not persuaded that the expense of copying documents depended entirely on the organization, or lack thereof with respect to the documents. The court would find that paralegal organization expense would be awardable, but no such figure is given here.

Attorneys' fees in the amount of $3,575.00 are requested not counting any hearing time. The court finds that the hourly rate and hours required to meet and confer as well as prepare the joint statement to be reasonable on their face albeit not reduced for any matters for which EID exhibited substantial justification. However, attorney Budwig appeared by telephone, and the $2,000.00 estimated for appearance at hearing was largely overestimated.

Thus, in calculating appropriate sanctions here, in consideration of the above and the fact that EID did not act with a total lack of substantial justification, the court finds that $3,000.00 is an appropriate sanction. EID shall pay this sanction within 15 days of the filed date of this order.

*Conclusion*

IT IS HEREBY ORDERED:

TBI's motion to compel and sanctions is granted in part. All further discovery ordered is as set forth above, and was ordered at hearing. Sanctions are awarded in the amount of $3,000.00.

IT IS HEREBY RECOMENDED:

TBI's motion for terminating sanctions should be denied.

DATED: 10/31/05

/s/ Gregory G. Hollows

_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:gh:035
EID949.sanc

7