UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

EL DORADO IRRIGATION DISTRICT,
a political subdivision of the
State of California,

        NO. CIV. S-03-949 LKK/GGH

        Plaintiff,

    v.                  O R D E R

TRAYLOR BROS., INC., an
Indiana corporation,

        Defendant.
_____/

AND RELATED COUNTER-CLAIMS.
_____/

    Defendants previously moved for summary adjudication on the issue of whether certain damages sought by plaintiff were precluded by the delay damages clause in the contract.  The court found that some of the damage claims (namely the costs for additional professional services) were at least arguably allowed because there were other provisions of the contract which suggested that they were not intended to fall within the delay damages clause.  See Order Filed Oct. 7, 2005.  The court found, however, that

1

plaintiff's request for damages for loss of public grant funding

was within the scope of the delay damages clause.  Accordingly, the

court granted summary judgment to the defendants on the public

grant issue and denied it for the other damages.  Id.

In their reply brief defendants raised a new category of

damages, the loss of power sales, and asked that the court grant

summary judgment in their favor on this issue.  The court was

unable to consider the question at that time since it was raised

in the reply brief, and thus defendants now move for partial

summary judgment on this issue.

**I.**

**FACTS**

The Contract contains the following liquidated damages

provisions:

PART 18 - LIQUIDATED DAMAGES

A.   It is understood and agreed by the parties that
damages for Contractor delay are expensive to litigate
and difficult to ascertain.  Therefore, it is agreed
that as and for a separately bargained for liquidated
damage, and not as a penalty, the District [EID] shall
deduct or recover the amount set for the in the Contract
Agreement unless extensions of time granted by Owner
specifically provide for the waiving of liquidated
damages.

8.11 Liquidated Damages/Bonus:  If the Project is not
Substantially Completed by Contractor and fully
operational within the Contract Time, or within any
period of extension authorized pursuant to section 8.10
or pursuant to a duly issued Change Order, Contractor
acknowledges and admits that EID will suffer damages and
that it is impracticable and infeasible to fix the
amount of actual damages.  Therefore, it is agreed by
and between Contractor and EID that Contractor shall pay
to EID, as fixed and liquidated damages and not as a
penalty, Five Hundred Dollars ($500) for each calendar

2

1   day of delay until the Project is Substantially
    Completed and fully operational, and that both
2   Contractor and Contractor's surety shall be liable for
    the total amount thereof, and that EID may deduct said
3   sums from any moneys due or that may become due to
    Contractor. If liquidated damages begin to accrue prior
4   to the time for final payment, the amount accrued shall
    be withheld from any progress payment that would
5   otherwise be due, in addition to any Project extension.

6   This liquidated damages provision shall apply to all
    delays or any nature whatsoever, save and except only
7   delays found to be Excusable or Compensable pursuant to
    section 8.10, hereinabove, or time extensions granted by
8   EID.

9   Agreement between EID and TBI, dated November 1, 1999.

10       EID has sought to enforce the above-quoted liquidated damages

11   term and seeks to assess liquidated damages against TBI in the

12   amount of $191,000.00.  Complaint, dated April 7, 2003; EID's

13   Initial and Supplemented Rule 26 Disclosure Statements Section C.1

14   (g); Deposition of Mark Korkowski at 216:19-217:4.  EID seeks to

15   recover $2,463,348 for lost power sales for the period of September

16   8, 2002 to December 10, 2003.  EID's August 5, 2005 Supplemented

17   Rule 26 Disclosure Statements, Section C.1.(k).

18       TBI alleged as a Sixteenth Affirmative Defense that EID's

19   complaint is barred by reason of the fact that the applicable

20   contract documents preclude the recovery sought by EID.  Agreement

21   between EID and TBI, dated November 1, 1999; Answer and

22   Counterclaim for Declaratory Relief, dated May 12, 2003.

23                                 **II.**

24                              **STANDARDS**

25       Summary adjudication, or partial summary judgment "upon all

26   or any part of a claim," is appropriate where there is no genuine

                                     3

issue of material fact as to that portion of the claim. <u>Lies v. Farrell Lines, Inc.</u>, 641 F.2d 765, 769 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim") (citations omitted); <u>Playboy Enters., Inc. v. Welles, Inc.</u>, 78 F. Supp. 2d 1066, 1073 (S.D. Cal. 1999), <u>aff'd in part, rev'd in part, on other grounds</u>, 279 F.3d 796 (9th Cir. 2002); E.D. Local Rule 56-260(f).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file." <u>Id.</u> Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>See</u> <u>id.</u> at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of

1  summary judgment, as set forth in Rule 56(c), is satisfied." Id.

2  at 323.

3      If the moving party meets its initial responsibility, the

4  burden then shifts to the opposing party to establish that a

5  genuine issue as to any material fact actually does exist.

6  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

7  586 (1986); See also First Nat'l Bank of Ariz. v. Cities Serv. Co.,

8  391 U.S. 253, 288-89 (1968); Secor Limited, 51 F.3d at 853.

9      In attempting to establish the existence of this factual

10  dispute, the opposing party may not rely upon the denials of its

11  pleadings, but is required to tender evidence of specific facts in

12  the form of affidavits, and/or admissible discovery material, in

13  support of its contention that the dispute exists.  See Fed. R.

14  Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11; See also First

15  Nat'l Bank, 391 U.S. at 289; Rand v. Rowland, 154 F.3d 952, 954

16  (9th Cir. 1998).  The opposing party must demonstrate that the fact

17  in contention is material, i.e., a fact that might affect the

18  outcome of the suit under the governing law, Anderson v. Liberty

19  Lobby, Inc., 477 U.S. 242, 248 (1986); Owens v. Local No. 169,

20  Assoc. of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th

21  Cir. 1992) (quoting T.W. Elec. Serv., Inc. v. Pacific Elec.

22  Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

23  dispute is genuine, i.e., the evidence is such that a reasonable

24  jury could return a verdict for the nonmoving party, Anderson, 477

25  U.S. 248-49; see also Cline v. Industrial Maintenance Engineering

26  & Contracting Co., 200 F.3d 1223, 1228 (9th Cir. 1999).

1    In the endeavor to establish the existence of a factual

2  dispute, the opposing party need not establish a material issue of

3  fact conclusively in its favor.  It is sufficient that "the claimed

4  factual dispute be shown to require a jury or judge to resolve the

5  parties' differing versions of the truth at trial."  First Nat'l

6  Bank, 391 U.S. at 290; See also T.W. Elec. Serv., 809 F.2d at 631.

7  Thus, the "purpose of summary judgment is to 'pierce the pleadings

8  and to assess the proof in order to see whether there is a genuine

9  need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R.

10  Civ. P. 56(e) advisory committee's note on 1963 amendments); see

11  also International Union of Bricklayers & Allied Craftsman Local

12  Union No. 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir.

13  1985).

14    In resolving the summary judgment motion, the court examines

15  the pleadings, depositions, answers to interrogatories, and

16  admissions on file, together with the affidavits, if any.  Rule

17  56(c); See also In re Citric Acid Litigation, 191 F.3d 1090, 1093

18  (9th Cir. 1999).  The evidence of the opposing party is to be

19  believed, see Anderson, 477 U.S. at 255, and all reasonable

20  inferences that may be drawn from the facts placed before the court

21  must be drawn in favor of the opposing party, see Matsushita, 475

22  U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654,

23  655 (1962)(per curiam)); See also Headwaters Forest Defense v.

24  County of Humboldt, 211 F.3d 1121, 1132 (9th Cir. 2000).

25  Nevertheless, inferences are not drawn out of the air, and it is

26  the opposing party's obligation to produce a factual predicate from

1  which the inference may be drawn.  See Richards v. Nielsen Freight

2  Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d

3  898, 902 (9th Cir. 1987).

4      Finally, to demonstrate a genuine issue, the opposing party

5  "must do more than simply show that there is some metaphysical

6  doubt as to the material facts. . . . Where the record taken as a

7  whole could not lead a rational trier of fact to find for the

8  nonmoving party, there is no 'genuine issue for trial.'"

9  Matsushita, 475 U.S. at 587 (citation omitted).

10                              **III.**

11                            **ANALYSIS**

12      The last time the court examined the liquidated damages clause

13  there were four different categories of damages in question.  The

14  first three[1], the court found, fell under the category of the

15  "corrective work" provision of the contract because they were

16  damages sought to pay three different sub-contractors whose work

17  had been extended because they were arguably repairing the

18  defective work done by TBI.  While they could be considered damages

19  for delay, the court concluded that this broad reading would

20  "undermine, if not nullify" a separate section of the contract

---

[1]  These damages were at issue in the last motion:
1.  $1,538,313.00 for MWH's extended project management
    services beyond the intended contractual completion
    date.
2.  $252,485.00 for EN2's extended environmental
    monitoring services.
3.  $1,571,888.00 for HPT's extended water treatment
    services.
4.  $1,901.333.00 for loss of public grant funds due to
    late completion.

1  which allowed plaintiff to seek recovery of correction damages,

2  "including compensation for additional professional services",

3  under §§ 13.07 and 13.09.  Oct. 7, 2005 Order at 17.

4       The loss of public grant funding was "more difficult to

5  categorize" because it was not directly linked to correction work,

6  nor did it easily fall into the category of professional services.

7  Id. at 18.  The court found that these damages did not fairly fall

8  under the "direct and indirect costs" of correction work because

9  such a broad reading would undermine the plain language of the

10 delay damages clause.  Id. at 19.  "Thus, where there is not a

11 provision elsewhere in the contract which provided for recovery of

12 a loss, the plain language in the liquidated damages clause

13 prevails."  Id.

14      The same analysis applies here for the loss of power sales.

15 To read them as an indirect cost of "removal and replacement"

16 instead of just a cost created by delay appears to render

17 ineffectual the delay damages clause.  Plaintiff has not provided

18 the court with any additional information which would show that the

19 loss of power sales is somehow more connected to the removal and

20 replacement than the loss of public grant funding was.

21 **A.   IS THE LIQUIDATED DAMAGES CLAUSE UNENFORCEABLE?**

22      Plaintiff points the court to § 53069.85 of California

23 Government Code which provides that:

24          The legislative body of a city, county, or district may
            include or cause to be included in contracts for public
25          projects a provision establishing the time within which
            the whole or any specified portion of the work
26          contemplated shall be completed. The legislative body

8

1    may provide that for each day completion is delayed
     beyond the specified time, the contractor shall forfeit
2    and pay to the agency involved a specified sum of money,
     which may be deducted from any payments due or to become
3    due to the contractor. The sum so specified is valid as
     liquidated damages unless manifestly unreasonable under
4    the circumstances existing at the time the contract was
     made.
5

6        Plaintiff claims that the meaning of the phrase "manifestly

7    unreasonable" has not been examined by the courts,[2] so it refers

8    the court to cases which interpret a part of the Civil Code which

9    addresses liquidated damages in similar terms, but which only

10   prohibits enforcement of provision which are "unreasonable under

11   the circumstances" (as opposed to "manifestly unreasonable"). Cal.

12   Civ. Code § 1671(b).  These cases hold that a liquidated damages

13   provision will be considered unreasonable "if it bears no

14   reasonable relationship to the range of actual damages that the

15   parties could have anticipated would flow from a breach." Ridgley

16   v. Topa Thrift & Loan Assn., 17 Cal.4th 970, 977 (1998).  Quoting

17   Garrett v. Coast & Southern Fed. Sav. & Loan Assn., 9 Cal.3d 731,

18   739 (1973), the court found that "the amount set as liquidated

19   damages 'must represent the result of a reasonable endeavor by the

20   parties to estimate a fair average compensation for any loss that

21   may be sustained.'" Ridgley, 17 Cal.4th at 977.

22   _____

23        [2]  In fact, there is one case that examined the phrase as used
     in that section and the court there held that "while liquidated
24   damages must fit within the conventions of reason, they are not
     necessarily approximations of actual damage suffered.
25   Correlatively, apportionment of an arguably arbitrary sum could not
     qualify as a true aliquot apportionment of damages in any real
26   sense of the word."  Vrgora v. Los Angeles Unified School Dist.,
     152 Cal.App.3d 1178, 1186 (1984).

1      The enormity of the damages sought under the category of lost

2 power sales, roughly $2.4 million (and arguably from the public

3 grant funding which was another $1.9 million) in comparison to the

4 relatively small amount under the delay damages clause, $191,000,

5 gives this argument a certain appeal.  The court in <u>Ridgley</u>

6 emphasized that liquidated damages provisions are to be created and

7 used primarily in situations where the damages truly would be

8 extremely difficult or impossible to otherwise ascertain.  <u>Id.</u>

9 Plaintiff claims that the loss of power sales should not fall under

10 that category because the damages could have been determined.

11 Indeed, they point to parole evidence which may show that the

12 parties had at some point included an actual table for the

13 calculation of lost power sales in the contract.[3]  The Government

14 Code section which applies here requires manifest unreasonableness

15 and yet plaintiff has not shown that the bargain was unreasonable

16 at the time the contract was entered into. Cal. Gov't Code

17 § 53069.85.  In fact, the court has been given no information on

18 why the table was removed, or why it was there in the first place.

19    EID suggests that either the loss of power sales were not to

20 be included because they were ascertainable, or that TBI "used its

21 lopsided bargaining power to force an inequitable liquidated

22 damages measure." Pl.'s Brief at 8.  However, they do not provide

23

24 _____

    [3] With the exception of the page from the contract draft, the
court does not have any other background information.  It is not
fully clear that the daily rates set out in the table were designed
25 for the loss of the power sales.  The table sets out different
rates for each month, presumably because the cost of power varies
26 seasonally, but that is not plain from the contract draft itself.

1  any reason why the court should believe that TBI had some sort of

2  bargaining advantage.

3       Plaintiff also points the court to <u>Pacific Employers Ins. Co.</u>

4  <u>v. City of Berkeley</u> for the proposition that if a contractor

5  abandons a public construction contract that the public entity may

6  recover its actual damages.  158 Cal.App.3d 145, 155-156 (1984).

7  It is clear, however, that the court in that case very specifically

8  held "that the contractor's abandonment of the project after the

9  date set for completion *does not alone render inapplicable* the

10  contract clause providing for liquidated damages for delayed

11  completion."  <u>Id.</u> (emphasis added).

12       While the court recognizes that EID may have lost a

13  significant amount of funding due to TBI's alleged error, it has

14  not provided sufficient additional evidence or reasoning to show

15  why the court should read outside of the lines of the contract and

16  find the plainly bargained for liquidated damages clause does not

17  apply.  The very fact that the power sales may have been included

18  in an earlier version and then removed may very well suggest that

19  there was no intention to create a separate opportunity for

20  collection of the power sales outside of the liquidated damages

21  clause.

22       Defendants argue that plaintiff is basically seeking to have

23  the court reconsider its original order on delay damages.  The

24  enforcability of the liquidated damages clause was not raised on

25  the first round, likely because EID actually believed the

26  liquidated damages clause to be valid, and only upon losing did

1  they reassess the validity.  However, defendants argument that the

2  court found the liquidated damages clause reasonable and

3  enforceable overstates the court's finding since the question was

4  not directly before the court.  Therefore, the court will not treat

5  this as a motion to reconsider.[4]

6                                    **IV.**

7                        **CONCLUSION AND ORDER**

8  _____While plaintiff's argument about the enforcability of the

9  delay damages clause is troubling, they do not meet their burden

10 by showing the court why it should read outside of the plain

11 language of the contract.  Accordingly, defendants' motion for

12 summary adjudication is GRANTED on the damages for lost power

13 sales.

14 _____IT IS SO ORDERED.

15      DATED:  January 4, 2006.

16
                              /s/Lawrence K. Karlton
17                            LAWRENCE K. KARLTON
                              SENIOR JUDGE
18                            UNITED STATES DISTRICT COURT

19

20

21

22

23 _____

24       [4]  The questions that plaintiff raises about the remedies for
   fraud and/or intentional misconduct do not appear to be at issue
   in the present motion.  The court is addressing what the remedies
25 are under contract, not tort.  As TBI concedes in their reply, the
   damages under a fraud theory are not at issue here and therefore
26 will not be addressed.

                                    12