UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

EL DORADO IRRIGATION DISTRICT,
a political subdivision of the
State of California,

         Plaintiff,

  v.

TRAYLOR BROS., INC., an
Indiana corporation,

         Defendant.
                               /
AND RELATED COUNTER-CLAIMS.
                               /

NO. CIV. S-03-949 LKK/GGH

O R D E R

    Once again the court is required to address this case.[1] Presently there are two issues before the court. First, Traylor Brothers ("TBI") moves to strike the expert report of Mark Korkowski and to preclude his testimony at trial as to opinions

////

---

[1] By the court's count, the parties have filed some nineteen motions before this court, while the number of motions before the assigned magistrate judge approaches the astronomical.

1

contained in the report and the reasons therefore.[2]  The second motion seeks preclusion of all El Dorado Irrigation District's ("EID") rebuttal expert testimony.

## I.

## FACTS

In June of 2005, Magistrate Judge Hollows held a Rule 26(f) conference during which he outlined the manner in which experts were to be disclosed.  In the subsequent Discovery Plan Order and Schedule, dated July 6, 2005, the court set out the following relevant dates:

- September 1, 2005 Rule 26 Expert Designation

- September 23, 2005 Rebuttal Expert Designation

With regards to the latter, the court stated that:

> All parties are cautioned that a rebuttal designation must be done in good faith; it is not to be utilized by a party as a means of obtaining a unilateral extension of the initial disclosure.  The court will impose sanctions for an unjustified abuse of the expert disclosure process which may include a striking of the expert.

Order of July 6, 2005 at 6.

This court issued a Status (Pretrial Scheduling) Conference Order dated July 20, 2005 wherein the court ordered that, in accordance with Judge Hollows' order, discovery would be left open such that it would be completed by January 12, 2006, with motions to compel before Judge Hollows to be filed no later than

---

[2] TBI actually seeks a broader preclusion order including all the information contained in the report.  Since, in addition to the experts opinions and reasons, the report also contains factual matter, such an order would be clearly too broad.

2

December 22, 2005. That order retained the expert disclosure dates set out by the magistrate judge - adding the following direction: "All experts so designated are to be fully prepared to render an informed opinion at the time of <u>designation</u> so that they may fully participate in any deposition taken by the opposing party." Order issued July 20, 2005 at 4.

On September 1, 2005, EID served its Expert Witness Disclosure, which included Mr. Korkowski and seven others. EID served expert reports as well, but did not include one for Mr. Korkowski. On September 23, 2005, EID served its Rebuttal Expert Witness Disclosure, which contained a total of seventeen witnesses, six of which were on the previous list. For the six persons that were doubly designated, it only provided rebuttal reports for two of them. There were no reports provided for the eleven other designated rebuttal experts.

On December 2, 2005, one week before the expiration of the expert deposition cut-off date, EID sent TBI an expert report for Mark Korkowski. TBI wrote on December 5, 2005 to object to the Korkowski report and request withdrawal. They also requested that EID withdraw the rebuttal witness disclosures. EID responded on December 6, 2005, by stating that the rebuttal disclosure complied with the Federal Rules and court orders and asked TBI to clarify why more information was needed. It also stated that it was not clear that Mr. Korkowski even needed to produce a report. On December 7, 2005, TBI responded by providing EID until the close of business to withdraw the

3

rebuttal designation.

## II.

## STANDARDS

Rule 37(b)(2) provides that when

> a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
> . . .
>
>    (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibit that party from introducing designated matters in evidence; . . .

Fed. R. Civ. P. 37(c)(1) provides as follows:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or Rule 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

## III.

## ANALYSIS

**A.  MARK KORKOWSKI**

It is clear that the Korkowski report was provided very late, approximately three months after it was due. The central question relative to the motion is whether EID was required to provide a report at all. Various sources inform resolution of

4

1  that question, the magistrate judge's statements at the Rule
2  26(f) conference held in July, his subsequent order, this
3  court's scheduling order, and finally, Rule 26 itself.
4      The most logical starting place is Rule 26(a)(2)(B) which
5  provides:
6      (B) Except as otherwise stipulated or directed by the
        court, this disclosure shall, with respect to a
7       witness who is retained or specially employed to
        provide expert testimony in the case or whose duties
8       as an employee of the party regularly involve giving
        expert testimony, be accompanied by a written report
9       prepared and signed by the witness.
10     It is undisputed that Mr. Korkowski is an employee of EID,
11 and EID asserts that he does not regularly provide it with
12 expert testimony.  It thus claims that under the Rule no report
13 was required.  While the language of the Rule, vel non, does
14 appear to support the District's position, analysis does not end
15 there.  Repeatedly, courts that have addressed the issue at bar
16 have concluded that the Rule does require a written report
17 despite the expert being employed by the tendering party in
18 other than a forensic capacity.  See, e.g., Minnesota Min. and
19 Mfg. Co. v. Signtech, USA, Ltd., 177 F.R.D. 459, 460 (D. Minn.
20 1998), where the court concluded that all employees who will
21 give expert testimony (and not hybrid fact/expert testimony) are
22 required under Rule 26(a)(2)(B) to produce a report.  The court
23 found that a purpose of the recent revisions to the Federal
24 Rules was to "to accelerate the exchange of basic information
25 about the case and to eliminate the paper work involved in
26 requesting such information." Id. at 460 (quoting the Advisory

5

1  Committee Notes on the 1993 Amendments).  Likewise, the court in
2  McCulloch v. Hartford Life and Acc. Ins. Co. held that if
3  employees were going to be testifying as expert witnesses (even
4  if they were primarily fact witnesses) the Rule should be
5  construed to require reports from them on the theory that by
6  being required to provide expert testimony "they can fairly be
7  viewed as having been retained or specially employed" by the
8  company in question. 223 F.R.D. 26, 28 (D. Conn. 2004); see also
9  KW Plastics v. United States Can Co., 199 F.R.D. 687, 688-690
10 (M.D. Ala. 2000); Prieto v. Malgor, 361 F.3d 1313, 1318 (11th
11 Cir. 2004) ("allowing a blanket exception for all employee
12 expert testimony would 'create a category of expert trial
13 witness for whom no written disclosure is required' and should
14 not be permitted.")  Some cases distinguish when an employee
15 should be required to submit a report on the basis of whether
16 they are primarily providing fact testimony or expert testimony.
17 While Korkowitz's testimony falls into both categories, he would
18 be providing expert testimony in certain key areas (namely with
19 respect to certain damages).
20      At least one question that is raised by the evolving Rule
21 26(a)(2)(B) jurisprudence is its effect on the actual language
22 of the Rule.  It may well be that at some point it is not
23 unreasonable to conclude that the weight of authority construing
24 a Rule defines its meaning, despite its language apparently
25 contradicting that construction.  I need not decide, however,
26 whether we have reached that point in the instant case.  The

language of the Rule contemplates modification by order of the Court. As the proceedings in the instant case demonstrate, various orders in the case clearly required a written report. In that connection, this court turns next to the Discovery Plan Order and Schedule issued by Judge Hollows on July 6, 2005, after this court referred the matter to him for a Rule 26f conference.  The order contains the following relevant provisions:

> For purposes of this Order "experts" are categorized as "percipient" and "Rule 26" experts. Percipient experts are persons who, because of their expertise, have rendered expert opinions in the normal course of their work duties which happen to be pertinent to the issues in the case. Another term for the opinion of a percipient expert is "historical opinion." Percipient experts are experts who, unless also designated as Rule 26 experts, are limited to testifying to their historical opinions and the reasons for them. That is, they may be asked to testify to their opinions given in the past and the whys and wherefores concerning the development of that opinion. However, they may not be asked to render a current opinion for the purposes of the litigation.

Order filed July 6, 2005 at 4-5.

It is plain from the order that Judge Hollows intended that all witnesses/experts who were to give anything more than "historical opinion" be designated as Rule 26 experts.  It is equally plain that EID proposes that Korkowski render opinions well beyond historical opinion.  Moreover, if there were any room for uncertainty (it does not appear to the court there is), a review of the hearing transcript makes crystal clear Judge Hollows' intention.

////

1    At the hearing Judge Hollows said:

2    We'll talk about non-expert depositions, and let me
     define for you what will come out in the scheduling
3    order. There's a thing called Rule 26 experts, then
     there's a thing called percipient experts. Percipient
4    experts, if I can just keep those categories separate
     for the moment for those experts who have expertise,
5    and much more than the common layperson, but they're
     not retained for purposes of this litigation to give
6    opinions, ultimate opinions in this litigation.

7    And so for example, someone running the tunnel machine
     might be very expert in that, but is not going to be
8    asked to give an opinion as to whether it operated
     properly, or so forth and so on.
9
     And so those experts are, you know, they're lay
10   people, and they'll be in the non-expert, in terms of
     discovery, you'll be able to get those - - they won't
11   be giving reports, you can just go ahead and depose
     those people.
12
     You can combine those categories, though, and for
13   instance, a tunnel operator, a machine person might
     also be giving opinions as to why that person thought
14   the machine operated properly.

15   In that case, they're both a percipient and a Rule 26
     expert and so you need to designate carefully with
16   respect to those experts, because I want all Rule 26
     type experts designated that would include the
17   percipient expert that's going to give an opinion with
     respect to issues in this litigation.
18
     But a pure percipient expert is what you did an why
19   you did it, that type of thing, way back when, but
     that's as far as it goes with respect to percipient
20   experts, and I'll describe this more fully in any type
     of written order that I do.
21
     I just don't want any key experts hidden because they
22   weren't retained, they weren't given a retainer, they
     weren't paid for purposes of this litigation. That's
23   not the be-all alpha and omega of expert disclosure
     here.
24

25   Transcript of June 29, 2005 Hearing at 29-31.

26   ////

8

Moreover, in response to queries by both sides, Judge Hollows emphasized, that "when in doubt, disclose them out." Id. at 31.  Specifically, when EID's attorney, Mr. Stump, observed that the line was blurry with regards to their employees who would testify on the operation and maintenance costs, etc.[3]  Judge Hollows stated that "[i]t sounds like Rule 26 to me, it really does. . . .  So again, if you have any doubt, disclose them as a Rule 26 expert, *get that report out*." Id. at 32 (emphasis added).

All of this makes it clear that Judge Hollows intended, and made clear his intention, that all persons who were going to be giving any present opinion testimony be designated as a "Rule 26" expert.  The transcript also makes it plain that all such experts were to submit a report.  Judge Hollow's order also states that: "Rule 26(a)(2)(b) reports shall be prepared in conformance with that rule to the greatest extent possible, and shall be served by September 15, 2005."  As EID appears to have belatedly realized, Judge Hollows was specific about what was required in the way of disclosures, and was also clear that if there was any doubt the parties were to err on the side of full disclosure.[4]  This court finds incredible any claim that EID did

---

[3] Which is part of Mr. Korkowski's proposed testimony.

[4] It is true that this court's Status Order provides that "No modifications of the discovery requirements found in the Federal Rules is ordered." Order filed July 20, 2005 at 3.  Clearly that order addressed the matters contained in the Status Order itself, and common sense, much less the terms of the order, suggested that it in no way contradicted the orders issued by Judge Hollows just

9

not know what Judge Hollows intended. They were at the hearing, specifically asked about an employee's testimony, and were told that if there was any doubt they should treat them as Rule 26 experts.[5]

It is crucial that this court defend the 26(f) order, otherwise chaos follows.[6] That in itself justifies granting TBI's motion. A second reason also justifies the remedy the defendant seeks.

Korkowski's report, and testimony premised on that report, should not be allowed because it contains the first mention of a great deal of information on certain damages that TBI had not previously provided. As the cases on employee expert reports cited above emphasize, the revisions made to Rule 26 in 1993 were intended to increase the amount of information available early on in the process. See, e.g., Minnesota Min. and Mfg. Co. v. Signtech, USA, Ltd., 177 F.R.D. 459, 460 (D. Minn. 1998). In this respect, EID has been less than forthcoming. Indeed, Judge Hollows has noted that EID has been holding back on information, or disclosing it only after much foot dragging. While he

---

days before in response to this court's referral of the matter of discovery to him. If EID thought there was ambiguity, they had ample opportunity to make inquiry. The fact that they did not do so is, in itself, telling.

[5] It is irrelevant, even if true, that counsel for EID did not obtain, and thus did not read, a transcript of the hearing until over a month after their disclosures and reports were due.

[6] In some small part, the court's determination is informed by the fact that the court has the highest weighted case load per judge in the entire federal system.

10

declined to recommend terminating sanctions recently at TBI's request, he did caution that eventually this strategy would backfire and speculated that this court was unlikely to allow EID to suddenly provide a whole raft of information at trial which had not been previously disclosed. See Findings and Recommendations issued Oct. 31, 2005 at 5.[7]  In an order dated August 17, 2005, Judge Hollows was discussing the exact damages which are now in Korkowski's report when he stated that:

> EID, and TBI for that matter, are cautioned that they will not be permitted to supplement their Rule 26 document disclosures via the "trickle" method.  Except for non-privileged Rule 26 documents which could not have been discovered thus far in the exercise of reasonable diligence, the time has come and gone for initial disclosures.  Experts may not be funneled new supporting documents which should have already been produced at this time, nor is it likely that the trial judge will look kindly on the attempted use of supporting Rule 26 documents which were not produced in accordance with court orders.  Unless substantial justification is found, sanctions are mandatory, and documents not produced for initial disclosures without valid excuse will be precluded from use.

While the court is not examining the disclosure of documents at this time, his warning still clearly applies.

This court recognizes that striking the Korkowski report is likely to substantially adversely affect certain of EID's damage

---

[7] Although declining to terminate the case, the judge wrote "the undersigned warns both parties that the court's patience is running thin at this point.  More resources are being devoted to this case than should be necessary.  The parties have been warned that preclusion sanctions could be issued for future misconduct." Id. at 5.  He also found that "[w]hile not rising to the level of obduracy required for preclusion or termination sanctions, EID's conduct in the remaining matters is at best carelessness which could have been avoided, and carelessness which impacted TBI in a prejudicial way."  Id. at 6.

11

claims, but there appears to be no reasonable explanation why the report was not provided as required. If the orders of this court are to have any meaning, it is necessary to strike the report and preclude the testimony.[8]

## B. REBUTTAL EXPERT DISCLOSURE

On the question of rebuttal experts, there simply appears to be no justification for EID's conduct. Judge Hollows was strenuous in his emphasis on the importance of not hiding the ball or gaming the discovery process by submitting a lengthy rebuttal expert list instead of noticing these experts in the initial list. This appears to be exactly what EID has done. The directions that Judge Hollows provided in his order are as follows:

> III. Expert Designation
> The court assigns the following disclosure schedule for Rule 26 experts (includes a person who is a hybrid Rule 26/percipient expert): September 1, 2005 for the parties to designate their experts; September 23, 2005 for all parties to designate rebuttal experts due to designations made previously by an opposing party. *All parties are cautioned that a rebuttal designation must be done in good faith; it is not to be utilized by a party as a means of obtaining a unilateral extension of the initial disclosure.* The court will impose sanctions for an unjustified abuse of the expert disclosure process which may include a striking of the expert.

July 6, 2005 Order at 6 (emphasis added).

////

---

[8] Of course, Mr. Korkowski may testify as a percipient witness, but all expert testimony addressed in the belated report will be prohibited.

12

1	Judge Hollows was even more emphatic at the hearing,
2	stating that:

>	The most important aspect of what we're doing here is
>	expert disclosures.  In getting my papers together, my
>	thoughts were to have experts disclosures in . . .
>	August 15th, '05, rebuttal experts, true rebuttal
>	experts, September 5, '05, and I would define rebuttal
>	much like we do at trial, it's something you can't
>	have anticipated.  I don't want any holding back on
>	the initial disclosures and then all of a sudden the
>	rebuttal expert list comes out, and it's a mile long.

8	Transcript of June 29, 2005 Hearing at 19.

9	EID initially designated only eight experts.  When it came
10	time for rebuttal experts, however, they designated seventeen
11	experts, five of which were on the earlier list.  While there
12	may be situations where this sort of "mile long" list would be
13	warranted in light of the other party's initial list, there does
14	not appear to be any such unusual situation here.

15	Until the reply brief submitted at the last hour, EID had
16	done absolutely nothing to explain why the list was so long, why
17	these experts would truly be "rebuttal experts" or why they
18	could not have been anticipated on the earlier list.  In a
19	declaration attached to its reply brief, EID belatedly tries to
20	explain why all these people really are rebuttal experts, that
21	is, why their testimony could not have been anticipated
22	previously, and why it is truly rebuttal testimony.  Sadly, its
23	reasons simply are unconvincing.  For virtually all of the
24	experts, the claim is that it could not have anticipated that
25	TBI's experts would testify as to the reasonableness,
26	competence, or necessity of certain aspects of the project.  It

13

is difficult to see how that was not foreseeable.

Rather, it appears that EID mostly objects to the relevance of such testimony, which is a different issue than the matter of the forseeability of such testimony[9] which is at issue in this motion.[10]  Expert reports were only provided for George Ashton and Patricia Galloway, and it is not clear if EID concedes that they are the only ones they intended to give non-percipient testimony.

The second question is whether EID was required to provide some sort of explanation as to what each of their designated rebuttal experts would be testifying on and why they are properly rebuttal experts.  It seems clear that the answer is yes.

Rule 26(a)(2)(A) requires that: "In addition to the disclosures required by paragraph (1), a party shall disclose to the other parties the identity of any person who may be used to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence."  Rule 26(a)(1)(A) (on initial disclosures) requires that "the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its

---

[9] At the final Pretrial Conference, the court will provide a schedule including provision for motions in limine which will give EID an opportunity to make the irrelevance case.

[10] Indeed, given the fact that the case has been significantly over-litigated, the failure of EID to inquire by way of contention interrogatories or otherwise concerning TBI's position is incomprehensible.

14

claims or defenses, unless solely for impeachment, *identifying the subject of the information* . . ." (Emphasis added). EID relies only on paragraph 26(a)(2)(A) when arguing that they were not required to provide anything other than the identify of the experts, while TBI argues that paragraph 26(a)(1)(A) requires that the subjects of the information be provided as well.

A blanket list, with no identifying information, is close to useless and would require a vast expenditure of resources on the part of TBI to make the disclosure meaningful. Prior to filing the present motions, TBI requested that EID provide such information, but it refused. This therefore appears to be either another instance of EID obdurance, or worse, failing to act in good faith.

Rule 37(b) provides the court with broad powers to fashion a sanction for EID's discovery abuse. "A party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37.

Thus, an element to the decision should be whether all of this was harmless. EID suggests it is not an error, and if so it was harmless. TBI, however, fairly claims they could not properly formulate their strategy on who to depose or even generally on what they would need to do at trial without knowing more about what all those seventeen persons were going to

testifying to at trial.  Moreover, of course, without a report of their opinions, deposition is likely to be extended and conceivably fruitless.

EID cites to the number of times that TBI cancelled depositions, etc.  Given the failure to make information available, TBI can hardly be faulted in determining not to go forward.

In light of the utter lack of justification for EID's behavior the court also hereby STRIKES the rebuttal expert list.

Accordingly, the court hereby ORDERS that:

1. The report and any expert testimony of Mark Korkowski is STRICKEN;

2. EID's rebuttal expert disclosure is STRICKEN; and

3. EID's cross-motion for conditional relief is DENIED.

IT IS SO ORDERED.

DATED:  January 24, 2006.

/s/Lawrence K. Karlton
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT