UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

EL DORADO IRRIGATION DISTRICT,
a political subdivision of the
State of California,

           Plaintiff,

    v.

TRAYLOR BROS., INC., an
Indiana corporation,

           Defendant.
_____/

AND RELATED COUNTER-CLAIMS.
_____/

NO. CIV. S-03-949 LKK/GGH

      O R D E R

    Pending before the court is defendant's motion for summary judgment seeking judgment on all of EID's remaining affirmative contract claims against both TBI and Travelers Insurance Co. under the theory that EID failed to fulfill conditions precedent to suit which were specified in the contract.  TBI also seeks judgment on the fraud claims since they argue they are based on the contract.

////

1

# I.

## FACTS[1]

On November 1, 1999, EID and TBI entered into a written contract for the construction of the Mill Bull Tunnel Project. Notice of Lodgment (NOL) Ex. 1 (Agreement), Ex. 2 (General Conditions), Ex. 3 (Special Provisions) and Ex. 4 (DRB Agreement); Declaration of George Miteer (Miteer Dec.) at ¶ 2.  Under the definitions of the Contract, EID is the "owner" or "district" and TBI is the "contractor."  NOL Ex. 2, at 1; Ex. 2, Definitions, at 1-2.

Under the contract EID was to designate an engineer to, among other things, act as EID's representative during the construction of the project.  NOL Ex. 2, at 21-22, Section 9.01A.  The Engineer was also responsible for the initial interpretation of the contract documents if, during the work, a claim or dispute arose relating to: (1) the acceptability of the work; or (2) the interpretation of the requirements of the contract documents pertaining to the execution and progress of the work.  NOL Ex. 2, at 22-23, Section 9.06A

In the event of a dispute or claim, the claimant was required to deliver notice to the Engineer and other party within fifteen days of the occurrence of the event giving rise to the claim.  NOL Ex. 2, at 22-23, Section 9.06A.  The Engineer was required to render a written decision on the claim or dispute within a

---

[1]  The facts are undisputed unless otherwise specified.

1   reasonable time or with reasonable promptness.  NOL Ex. 2, at

2   22-23, Sections 9.03A, 9.06A.

3        Under the contract terms, the rendering of the Engineer's

4   Decision was a "condition precedent to any exercise by Owner or

5   Contractor of the rights or remedies as either may otherwise have

6   under the contract or at law."  NOL Ex. 2, at 23, Section 9.06B;

7   Ex. 6. at 3.  The contract required the Engineer, when acting in

8   the capacity of interpreter and judge, to show no partiality to the

9   owner or contractor. NOL Ex. 2, at 23, section 9.06A.

10  **A.   DISPUTES REVIEW BOARD**

11       The contract also mandated the establishment of a Disputes

12  Review Board (DRB).  NOL Ex. 3, at 28, section 8.15; NOL Ex. 4.

13  The provision for a DRB was implemented in a separate agreement

14  between TBI, EID and the members of the DRB. (DRB Agreement.)  NOL

15  Ex. 4.  The stated purpose and intent for the DRB in both the

16  Contract and the DRB Agreement, was the parties' desire to have an

17  established entity to provide assistance to the contracting parties

18  in resolving claims and disputes in a fair and impartial manner.

19  NOL Ex. 3, at 28-29, Section 8.15(1)(a)(d); NOL Ex. 4, DRB

20  Agreement, at 1, section I.  The DRB was to be composed of three

21  members: one appointed by the contractor, one appointed by the

22  owner, and the third selected by the contractor's and owner's

23  appointees and agreed to by the parties to serve as chairperson of

24  the DRB.  NOL Ex. 4, at 1, DRB Agreement Recital; Ex. 3, at 29,

25  Section 8.15(2)(a)(1) and (2).

26  ////

1  Under the DRB Agreement, the DRB was to remain a functioning
2  entity until "the day of acceptance of the Work."  NOL Ex. 4, at
3  6, Section V.  Both the Contract and DRB Agreement allowed for the
4  termination of a contracting party's appointed representative on
5  the DRB.  NOL Ex. 3, at 31, Section 8.15.2.d(1); Ex. 4, at 8,
6  Section VIII.  Neither the Contract nor the DRB Agreement allowed
7  for either owner or contractor to terminate the entire DRB without
8  the other party's consent.  EID Ex. 3, at 31-32, section 8.15.2.d;
9  Ex. 4, at 8, section VIII.

10  Under the Contract, "[t]he DRB shall be used when the parties
11  are unable to resolve a dispute or claim."  NOL Ex. 3, at 28,
12  Section 8.15.1.b.  For purposes of DRB jurisdiction, a "dispute"
13  included "all differences of opinion or disagreements concerning
14  the scope of work, the amount to be paid, the time for performance,
15  and all similar matters relating to the Project."  NOL Ex. 3, at
16  28, section 815.1.c.  Under the DRB Agreement, upon receipt by the
17  DRB of a written referral of a claim or dispute, from either party
18  to the DRB Agreement, the DRB was required to convene to review and
19  consider the matter.  NOL Ex. 4, at 3, section D.

20  **B.   FILING OF LAWSUIT**

21  On or before April 7, 2003, the parties disagreed as to
22  whether TBI had performed in accordance with the terms of the
23  agreement.  On that date, EID filed a Complaint in the Superior
24  Court of El Dorado County, Case No. PC20030188 ("EID Complaint").
25  NOL Ex. 7 [See Request for Judicial Notice].  The EID Complaint
26  addressed its assertion that TBI had not performed as required by

4

1  the contract and alleged causes of action for Breach of Contract,

2  Violation of California Civil False Claims Act, Fraud, and sought,

3  inter alia, injunctive relief.  NOL Ex. 7.  Prior to filing, EID

4  did not request the Engineer to issue a formal written decision on

5  any of the claims or disputes in the EID Complaint.

6  **C.   TERMINATION OF DRB AND NO REFERRAL OF CLAIMS OR DISPUTES
          TO DRB**

7

8      On July 25, 2003, EID terminated its appointee to the DRB, Mr.

9  Korbin, and claimed the DRB decisions were invalid because it was

10  improperly constituted and biased.  NOL Exs. 11 & 12.  EID has

11  never submitted the claims and disputes in its Complaint to the

12  DRB.  Miteer Dec. at ¶ 9.

13                                **II.**

14                             **STANDARDS**

15      Summary judgment is appropriate when it is demonstrated that

16  there exists no genuine issue as to any material fact, and that the

17  moving party is entitled to judgment as a matter of law.  Fed. R.

18  Civ. P. 56(c); See also Adickes v. S.H. Kress & Co., 398 U.S. 144,

19  157 (1970); Secor Limited v. Cetus Corp., 51 F.3d 848, 853 (9th

20  Cir. 1995).

21      Under summary judgment practice, the moving party

22          [A]lways bears the initial responsibility of
            informing the district court of the basis for
23          its motion, and identifying those portions of
            "the   pleadings,   depositions,   answers   to
24          interrogatories,   and   admissions   on   file,
            together with the affidavits, if any," which
25          it believes demonstrate the absence of a
            genuine issue of material fact.

26

5

1  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the

2  nonmoving party will bear the burden of proof at trial on a

3  dispositive issue, a summary judgment motion may properly be made

4  in reliance solely on the 'pleadings, depositions, answers to

5  interrogatories, and admissions on file.'"  Id.  Indeed, summary

6  judgment should be entered, after adequate time for discovery and

7  upon motion, against a party who fails to make a showing sufficient

8  to establish the existence of an element essential to that party's

9  case, and on which that party will bear the burden of proof at

10 trial.  See id. at 322.  "[A] complete failure of proof concerning

11 an essential element of the nonmoving party's case necessarily

12 renders all other facts immaterial."  Id.  In such a circumstance,

13 summary judgment should be granted, "so long as whatever is before

14 the district court demonstrates that the standard for entry of

15 summary judgment, as set forth in Rule 56(c), is satisfied."  Id.

16 at 323.

17     If the moving party meets its initial responsibility, the

18 burden then shifts to the opposing party to establish that a

19 genuine issue as to any material fact actually does exist.

20 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

21 586 (1986); See also First Nat'l Bank of Ariz. v. Cities Serv. Co.,

22 391 U.S. 253, 288-89 (1968); Secor Limited, 51 F.3d at 853.

23     In attempting to establish the existence of this factual

24 dispute, the opposing party may not rely upon the denials of its

25 pleadings, but is required to tender evidence of specific facts in

26 the form of affidavits, and/or admissible discovery material, in

1  support of its contention that the dispute exists.  Fed. R. Civ.

2  P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11; <u>See also</u> <u>First Nat'l</u>

3  <u>Bank</u>, 391 U.S. at 289; <u>Rand v. Rowland</u>, 154 F.3d 952, 954 (9th Cir.

4  1998).  The opposing party must demonstrate that the fact in

5  contention is material, i.e., a fact that might affect the outcome

6  of the suit under the governing law, <u>Anderson v. Liberty Lobby,</u>

7  <u>Inc.</u>, 477 U.S. 242, 248 (1986); <u>Owens v. Local No. 169, Assoc. of</u>

8  <u>Western Pulp and Paper Workers</u>, 971 F.2d 347, 355 (9th Cir. 1992)

9  (quoting <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>,

10 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine,

11 i.e., the evidence is such that a reasonable jury could return a

12 verdict for the nonmoving party, <u>Anderson</u>, 477 U.S. 248-49; <u>see</u>

13 <u>also</u> <u>Cline v. Industrial Maintenance Engineering & Contracting Co.</u>,

14 200 F.3d 1223, 1228 (9th Cir. 1999).

15      In the endeavor to establish the existence of a factual

16 dispute, the opposing party need not establish a material issue of

17 fact conclusively in its favor.  It is sufficient that "the claimed

18 factual dispute be shown to require a jury or judge to resolve the

19 parties' differing versions of the truth at trial."  <u>First Nat'l</u>

20 <u>Bank</u>, 391 U.S. at 290; <u>See also</u> <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.

21 Thus, the "purpose of summary judgment is to 'pierce the pleadings

22 and to assess the proof in order to see whether there is a genuine

23 need for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R.

24 Civ. P. 56(e) advisory committee's note on 1963 amendments); <u>see</u>

25 <u>also</u> <u>International Union of Bricklayers & Allied Craftsman Local</u>

26 <u>Union No. 20 v. Martin Jaska, Inc.</u>, 752 F.2d 1401, 1405 (9th Cir.

1  1985).

2      In resolving the summary judgment motion, the court examines
3  the  pleadings,  depositions,  answers  to  interrogatories,  and
4  admissions on file, together with the affidavits, if any.  Rule
5  56(c); See also In re Citric Acid Litigation, 191 F.3d 1090, 1093
6  (9th Cir. 1999).  The evidence of the opposing party is to be
7  believed,  see  Anderson,  477 U.S. at 255,  and  all  reasonable
8  inferences that may be drawn from the facts placed before the court
9  must be drawn in favor of the opposing party, see Matsushita, 475
10  U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654,
11  655 (1962) (per curiam)); See also Headwaters Forest Defense v.
12  County  of  Humboldt,  211  F.3d  1121,  1132  (9th  Cir.  2000).
13  Nevertheless,  inferences  are  not  drawn  out  of  the  air,  and  it  is
14  the opposing party's obligation to produce a factual predicate from
15  which the inference may be drawn.  See Richards v. Nielsen Freight
16  Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d
17  898, 902 (9th Cir. 1987).

18      Finally, to demonstrate a genuine issue, the opposing party
19  "must do more than simply show that there is some metaphysical
20  doubt as to the material facts. . . . Where the record taken as a
21  whole could not lead a rational trier of fact to find for the
22  nonmoving  party,  there  is  no  'genuine  issue  for  trial.'"
23  Matsushita, 475 U.S. at 587 (citation omitted).

24  ////

25  ////

26  ////

**III.**

**ANALYSIS**

TBI claims that EID failed to fulfill a condition precedent which required it to seek an engineer's decision prior to litigating certain disputes.  They also claim that EID failed to bring the claims to the Dispute Review Board (DRB). On this basis, they seek judgment in their favor.[2]  EID has provided a long list of defenses focusing on the applicability of the condition precedent and on TBI's failure to perform the contract.  Below the court resolves the matter.

TBI relies on §9.06 of the contract which provides:

9.06 Decisions on Disagreements

> A.  Engineer will be the initial interpreter of the requirements of the contract documents and judge of the acceptability of the Work thereunder.  Claims, disputes and other matters relating to the acceptability of the Work or the interpretation of the requirements of the contract documents pertaining to the execution and progress of the Work shall be referred initially to Engineer in writing with a request for a formal decision in accordance with this paragraph, which Engineer will render in writing within a reasonable time.  Written notice of each such claim, dispute and other matter shall be delivered by the claimant to Engineer and the other party to the Agreement within fifteen days of occurrence of the event giving rise thereto, and written supporting data will be submitted to Engineer and the other party within forty-five (45) days of such occurrence unless Engineer allows an additional period of time to ascertain more accurate data.  In his capacity as interpreter and judge, Engineer will not show partiality to Owner or Contractor and will not be liable in connection with any interpretation or decision rendered in good faith in such capacity.

---

[2]  Why judgment rather than a stay is the appropriate remedy is not specified.

1       B.   The  rendering  of  a  decision  by  the  Engineer
   pursuant to paragraph 9.06.A with respect to any such
2  claim, dispute or other matter (except which have been
   waived by the making or acceptance of final payment as
3  provided in paragraph 14.11.A [sic]) will be a condition
   precedent to any exercise by Owner or Contractor of such
4  rights  or  remedies  as  either  may  otherwise  have  under
   the contract documents or at law in respect of any such
5  claim, dispute or other matter. (Ex. 3, pat 22-23.)

6       TBI asserts that the language of the above provision requires

7  that submission of disputes to the Engineer was mandatory prior to

8  seeking a remedy under the contract or at law.  EID asserts a

9  number of different defenses, claiming that the section was not

10 meant to apply broadly, that the section violates state law, and

11 that other sections of the contract are in conflict.  EID does not

12 contend that it submitted the claim underlying this suit to the

13 Engineer.  It does contend, that they "substantially complied" with

14 §9.06.

15      Rather than wading knee deep into the myriad of arguments

16 presented by EID regarding possible conflicts in the contract or

17 other reasons why the condition precedent and or DRB provision is

18 invalid, the court is compelled to deny summary judgment on a

19 simpler ground, namely waiver.

20      This case was removed to this court just short of three years

21 ago, on May 7, 2003.  TBI filed its initial answer to the removal

22 complaint on May 12, 2003.  As TBI notes, it raised the

23 contractually-obligated administrative remedies as an affirmative

24 defense when it submitted its answer.  Nonetheless, for reasons

25 that TBI has not explained, it waited until now to rely on the

26 asserted condition precedent.

1    As this court has noted a number of times, this case has been

2 extremely heavily, possibly excessively, litigated by both parties.

3 Both California and federal law permits a court to conclude that

4 a party has waived their right to pursue arbitration when they have

5 failed to fairly pursue that option and behaved in a manner which

6 suggested that they did not intend to.  The court can conceive of

7 no reason why the instant claim, essentially identical to an

8 arbitration claim, should not be subject to the same analysis.

9    In Sobremonte v. Superior Court, the California Court of

10 Appeal referred to the following factors relative to waiver:

11       In determining waiver, a court can consider '(1) whether
         the party's actions are inconsistent with the right to
12       arbitrate; (2) whether "the litigation machinery has
         been substantially invoked" and the parties "were well
13       into preparation of a lawsuit" before the party notified
         the opposing party of an intent to arbitrate; (3)
14       whether a party either requested arbitration enforcement
         close to the trial date or delayed for a long period
15       before seeking a stay; (4) whether a defendant seeking
         arbitration filed a counterclaim without asking for a
16       stay of the proceedings; (5) "whether important
         intervening steps [e.g., taking advantage of judicial
17       discovery procedures not available in arbitration] had
         taken place"; and (6) whether the delay "affected,
18       misled, or prejudiced" the opposing party.'

19 61 Cal.App.4th 980, 992 (1998); see also Law Offices of Dixon R.

20 Howell v. Valley, 129 Cal.App.4th 1076, 1097 (2005); Simms v. NPCK

21 Enterprises, Inc., 109 Cal.App.4th 233, 239 (2003); Groom v. Health

22 Net, 82 Cal.App.4th 1189, 1194 (2000).  The California Supreme

23 Court expressly endorsed these factors, explaining that they are

24 "relevant and properly considered in assessing waiver claims" and

25 also noting that the state's decisions hold that "the 'bad faith'

26 or 'wilful misconduct' of a party may constitute a waiver and thus

1  justify a refusal to compel arbitration."   <u>Saint Agnes Medical</u>

2  <u>Center v. PacifiCare of California</u>, 31 Cal.4th 1187, 1196 (2003).[3]

3      Likewise, the federal courts have held that a waiver may be

4  found under the Federal Arbitration Act, if there is "(1) knowledge

5  of an existing right to compel arbitration; (2) acts inconsistent

6  with that existing right; and (3) prejudice to the party opposing

7  arbitration resulting from such inconsistent acts."[4]   <u>Britton v.</u>

8  <u>Co-op Banking Group</u>, 916 F.2d 1405, 1412 (9th Cir. 1990); <u>Chappel</u>

9  <u>v. Laboratory Corp. of America</u>, 232 F.3d 719, 724 (9th Cir. 2000).[5]

10  Both the federal and state cases put a heavy burden on the party

11  seeking the waiver and both emphasize the same basic elements for

12  consideration.   <u>Britton</u>, 916 F.2d at 1412; <u>Sobremonte</u>, 61

13  Cal.App.4th at 991 (citing <u>Keating v. Superior Court</u>, 31 Cal.3d

14  _____

15  [3]  The courts have held that a finding of waiver is generally an issue of fact upon which the trial court may make a

16  determination if examining undisputed issues. <u>Law Offices of Dixon R. Howell v. Valley</u>, 129 Cal.App.4th 1076, 1098 (2005) (stating that waiver is a question of fact but where the facts are

17  undisputed and "only one inference may reasonably be drawn" the appellate court may treat it as a question of law); <u>Simms v. NPCK</u>

18  <u>Enterprises, Inc.</u>, 109 Cal.App.4th 233, 239 (2003) ("A trial court shall refuse to compel arbitration if it determines that the right

19  to compel arbitration has been waived.").  The court's consideration here relies exclusively upon the plain evidence in

20  the court's docket.

21      [4]  There is some dispute amongst the circuits as to whether a showing of prejudice is essential.  <u>See</u> <u>Uwaydah v. Van Wert</u>

22  <u>County Hosp.</u>, 246 F.Supp.2d 808, 811-12 (N.D. Ohio 2002) (Outlining the various circuits which require a finding of prejudice,

23  including the Ninth Circuit, and those which consider it only as a factor).

24

25      [5]  The waiver rule exists in various forms in a very large number of jurisdictions, for a sample see Joel E. Smith,

26  <u>Defendant's Participation in Action as Waiver of Right to</u> <u>Arbitration of Dispute Involved Therein</u>, 98 A.L.R. 3d 767.

1  584, 604 (1982)).

2  Although these cases create a test to be used where

3  arbitration was a prerequisite to litigation, as I indicated above

4  there is no apparent reason to distinguish the matter at bar from

5  arbitration cases.  Indeed, defendant's motion urges the court to

6  view the arbitration cases they offer as relevant, since ultimately

7  arbitration is simply another form of contractually agreed-upon

8  dispute resolution.  Put directly, applying the elements of the

9  arbitration waiver cases approved by the California courts to the

10  instant matter makes it perfectly clear that defendant has waived

11  a right to rely on the contract clause in issue.

12  The first element asks whether the party's actions were

13  inconsistent with the right to arbitrate, the second examines

14  whether the litigation machinery has been substantially invoked and

15  how far into the lawsuit the parties have advanced and the third

16  asks whether the party requested arbitration close to the trial or

17  otherwise delayed for a significant period.

18  The court in Sobremonte was analyzing a case brought by two

19  bank customers against their bank.  61 Cal.App.4th at 984-990.  The

20  bank had inserted an arbitration clause into the contract but did

21  not invoke it (outside of their answer) until after a year into the

22  litigation.  Id.  The court in Sobremonte detailed the steps of the

23  litigation up to the point that the arbitration clause was invoked,

24  stating:

25      In the ten months between service of the complaint and
        the motion to compel, the Bank filed two demurrers, one
26      cross-complaint, and one motion to transfer the case to

1    the municipal court. The Bank also participated in five
     trial court hearings, including two status conferences,
2    and extensive discovery. The Bank actively litigated the
     case and never objected to the court's setting a trial
3    date or to the discovery propounded by Sobremonte and
     Esperidion on grounds of arbitration. The Bank objected,
4    however, to a number of the propounded interrogatory and
     document requests. Not one of those objections was based
5    on arbitration. Additionally, the discovery protective
     orders and oppositions to motions to compel filed by the
6    Bank failed to contain any argument based on
     arbitration.

7

8    Sobremonte, 61 Cal.App.4th at 994; see also Law Offices of Dixon

9    R. Howell, 129 Cal.App.4th at 1099 (finding waiver where the party

10   did not move to stay or dismiss the action until 15 months after

11   the action was filed and 13 months after the affirmative defense

12   was first asserted); Uwaydah v. Van Wert County Hosp., 246

13   F.Supp.2d at 812 (finding that eighteen months of litigation,

14   involving extensive and protracted discovery, was more than

15   sufficient for a finding of waiver).

16        The conduct in the California cases noted above pales in

17   comparison to those that have been litigation practice in this

18   case.  TBI has filed over twenty-five motions before this court,

19   including three motions for summary judgment, a motion for

20   reconsideration, a motion for a temporary restraining order and a

21   preliminary injunction, and innumerable motions to compel

22   discovery.  TBI has moved for summary judgment on the substance of

23   issues related to the condition precedent they are now claiming

24   (see the motions for summary adjudication on fraud, false claims,

25   and delay damages).  The present motion for summary judgment was

26   filed at the very last opportunity before the close of motion

                                    14

practice and less than seven months before trial was set; to say that the parties are "well into preparation of a lawsuit" would be a gross understatement.  Sobremonte, 61 Cal.App.4th at 992; Law Offices of Dixon R. Howell, 129 Cal.App.4th at 1100 (finding that waiver was suggested where the party waited until the eve of trial to move to dismiss the suit).  Thus, both the first, second and third factors heavily favor a finding of waiver here.

The fourth factor asks whether the defendant filed a counterclaim without asking for a stay.  Participation in litigation alone is not enough to demonstrate a waiver.  Analysis also requires consideration of the extent of the litigation, the demonstrated intent of the parties, and the number of issues, if any, which may have been decided during the course of the litigation.  Nonetheless, the extent of participation is a good indicator of intent.  Groom v. Health Net, 82 Cal.App.4th 1189, 1194.  Defendants filed counterclaims (and an affirmative defense) in this matter[6].  Indeed, defendants moved for summary judgment on some of the damages being sought under the contract (namely the delay damages) four months before moving to dismiss the entire contract claim.[7]  It is established that "a party may waive his right to arbitration by allowing the action to go to judgment

---

[6]  Raising an affirmative defense, without more, is not sufficient to defeat a finding of waiver.  Sobremonte, 61 Cal.App.4th at 993; Law Offices of Dixon R. Howell, 129 Cal.App.4th at 1099.

[7]  They also moved to dismiss the fraud cause of action, which they now claim should also be dismissed because of the condition precedent clause.

without objection." <u>Doers v. Golden Gate Bridge</u>, 23 Cal.3d 180, 188 (1979)).  Here, defendants themselves sought judgment on the merits prior to raising this issue in a motion.  Indeed, at oral argument the court asked TBI why they waited all this time to bring this claim which is predominately a question of law and apparently relies on nothing that was not available at the start of the case.  TBI was utterly unable to explain the delay.  The fourth factor again weighs in favor of waiver.

The fifth and six factors, which ask about the utilization of the judicial discovery procedures and about prejudice equally point to waiver.

The prejudice adverted to in the cases is normally that of a party obtaining evidence or strategy though the litigation process which could then be used harmfully in arbitration, that is using the litigation process to obtain opposing parties' strategy before using the contractually-provided alternative dispute process.  Clearly, given the extent of litigation all of the plaintiff's case has been discovered.[8]

Besides the risk of revealing their case, there are other types of prejudice that are obvious here.  Defendants collectively filed about fifteen separate motions to compel discovery, much of which, it seems, would have been unnecessary if they had moved to dismiss the contract action at the outset.  Furthermore, it is

---

[8] Given the fact that plaintiff's contract case relies upon a faulty alignment, this may not be as significant of a factor in the matter at bar.

16

1   clear that the delay may have affected and misled the opposing

2   party.  This delay in moving certainly cost hundreds of thousands

3   of dollars in what may have been entirely unnecessary litigation

4   resources, both on the part of the plaintiff and the court.  The

5   courts have stated that they will "not find prejudice where the

6   party opposing arbitration shows only that it incurred court costs

7   and legal expenses." <u>Saint Agnes Medical Center v. PacifiCare of</u>

8   <u>California</u>, 31 Cal.4th 1187, 1203 (2003).  Here, though, where it

9   is unclear whether EID could even go back and ask for an Engineer's

10  Decision, these expenses seem most relevant.[9]

11      All told, it is plain that defendants' decision to not bring

12  this motion until now was a gross abuse of the resources of the

13  court and the opposing party, not to mention the defendants

14  themselves.  The behavior of defendants up to this point surely

15  demonstrates that they did not intend to enforce the condition

16  precedent clause.

17      Both the state and federal cases apply a rigorous analysis in

18  determining whether the party seeking arbitration has waived,

19  because the law generally strongly favors arbitration.  <u>See</u> <u>Saint</u>

20

---

21      [9] Moreover, the court must be frank.  This district has the
    highest weighted caseload per active judge in the United States.
22  Defendant's conduct is simply intolerable in light of the court's
    docket.  While imposition on the court has not generally received
23  the kind of weight it deserves, in this case it certainly should,
    at minimum, be considered.  It is no answer to say that now
24  defendant will relieve the court from further litigation.  The
    damage has been suffered, and the court has been forced to spend
25  enormous resources in learning what this case is about.
    Defendant's suggestion that all that effort should be set aside is
26  a remarkable display of "chutzpah."

1    <u>Agnes Medical Center</u>, 31 Cal.4th at 1203 (quoting <u>Moncharsh v.</u>

2    <u>Heily & Blase</u>, 3 Cal.4th 1, 9 (1992)); <u>Fisher v. A.G. Becker</u>

3    <u>Paribas Inc.</u>, 791 F.2d 691, 694 (9th Cir. 1986) ("Waiver of a

4    contractual right to arbitration is not favored."); <u>ATSA of</u>

5    <u>California, Inc. v. Continental Ins. Co.</u>, 702 F.2d 172, 175 (9th

6    Cir. 1983) ("Arbitration clauses are to be liberally construed, and

7    any doubts about the scope of an arbitration clause are to be

8    resolved in favor of arbitration.").  This is not the case for

9    conditions precedent, as they are strongly disfavored by the law

10   and are to be strictly interpreted against the party seeking to

11   enforce such a provision.  <u>Helzel v. Superior Court</u>, 123 Cal.App.3d

12   652, 663 (1981); <u>Pacific Allied v. Century Steel Products, Inc.</u>,

13   162 Cal.App.2d 70, 79-81 (1958).

14   **A.   ADDITIONAL DISPUTED ISSUES**

15        The court is also convinced that even if TBI had not waived

16   its rights, the court could not resolve the question on summary

17   judgment.  EID has raised a slew of defenses regarding the

18   condition precedent, some of which appear to raise material

19   disputed facts.  Specifically, EID claims that TBI repudiated their

20   contractual obligations, and/or committed a first material breach

21   after hole-through when they refused to repair the tunnel and

22   remove the TBM from the site.  EID claims that TBI's breach was so

23   significant that it released EID from its obligation to comply with

24   the other conditions of the contract.  "Whether a breach is so

25   material as to constitute cause for the injured party to terminate

26   a contract is ordinarily a question for the trier of fact."

                                    18

1  <u>Whitney Inv. Co. v. Westview Development Co.</u>, 273 Cal.App.2d 594,

2  601 (1969).

3      There are also significant questions about exactly which

4  disputes were required to go before the Engineer.  TBI's motion

5  does not highlight exactly which disputed issues it believes were

6  to be heard by the Engineer.  EID claims that the Engineer

7  determined that the tunnel was misaligned, and that TBI did not

8  dispute that, and thus there was no need to bring the dispute to

9  the Engineer for a further decision.  If this is true, then it

10  would have been the responsibility of TBI to bring the claim to the

11  Engineer if they disputed the misalignment finding.  Since the

12  misalignment appears to be the central fact for the contract claim,

13  it appears that at least part of that claim could survive.

14  **B.   DISPUTE REVIEW BOARD**

15      With regards to the Dispute Review Board, this court

16  previously denied TBI's request for a preliminary injunction to

17  prevent EID from issuing a further termination notice.  Therein,

18  the court made substantial findings regarding the applicability of

19  the DRB.  The central issue in that motion was whether the contract

20  had already been terminated, such that the DRB created by the

21  contract would no longer function.  The court denied the injunction

22  on the ground that EID had demonstrated a high likelihood of

23  success on the merits, and it does not appear that TBI has

24  presented anything which undermines that conclusion.[10]  The court

25  _____

26      [10]  Indeed, TBI has failed to even recognize this court's
   previous findings in its briefs.

1  determined that the record indicated that TBI expressly refused to

2  perform its obligations under the contract to the satisfaction of

3  the District, despite the District having repeatedly warned TBI

4  that failure to perform would result in termination.  Id. at 20.

5  A party's repudiation of a contract, whether express or implied,

6  results in termination of the contract.  Taylor v. Johnston, 15

7  Cal.3d 130, 137 (1975).  The court found that the facts

8  "conclusively" established that the District terminated the

9  contract when TBI refused to perform after being given a number of

10  opportunities.  Id. at 20.  Thus, following termination, the DRB

11  would cease to function except that it could complete "unfinished

12  dispute hearings and reports" of which there were none.  Id.

13  "[T]his result is consistent with the purpose and scope of DRB

14  proceedings, which is to adjudicate issues arising during the

15  course of performance of the contract rather than issues remaining

16  after the termination of a contract due to repudiation or failure

17  to perform."  Id.

18                                **IV.**

19                        **CONCLUSION & ORDER**

20      The court finds that summary judgment must be denied because

21  defendants have waived their right to enforce the condition

22  precedent.  Moreover, there are a number of disputed issues of

23  material fact which remain and would prevent the court from

24  deciding the applicability of the provision at this time.  Finally,

25  the court has already determined that the DRB was likely no longer

26  applicable after termination, and defendants have submitted no

information to alter that conclusion at this time.

Defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED.

DATED:  April 3, 2006.

/s/Lawrence K. Karlton
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

21