1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   EL DORADO IRRIGATION DISTRICT,
     a political subdivision of the
12   State of California,
                                        NO. CIV. S-03-949 LKK/GGH
13           Plaintiff,

14      v.                                    O R D E R

15   TRAYLOR BROS., INC., an
     Indiana corporation,
16
             Defendant.
17   _____/

18   AND RELATED COUNTER-CLAIMS.
     _____/
19

20        The El Dorado Irrigation District ("EID") filed suit against

21   Traylor Brothers, Inc. ("TBI") as well as Travelers Casualty and

22   Surety Company of America ("Travelers") for breach of contract.

23   TBI filed a counterclaim against EID also alleging breach of

24   contract.   The matter proceeded to trial on September 19, 2006.

25   The jury rendered its verdict on November 30, 2006 and found for

26   TBI.   The jury concluded that EID breached its contract with TBI

                                    1

1  and awarded $6,264,312.00 in damages.

2      Pending before the court are the following motions: (1) EID's

3  motion for a new trial; (2) EID's renewed Rule 50 motions; (3)

4  TBI's motion for attorneys' fees; (4) TBI's Bill of Costs; and (5)

5  TBI's motion for prejudgment interest.  The court addresses each

6  motion in turn.[1]

7                              **ANALYSIS**

8                                 **I.**

9                     **EID'S MOTION FOR NEW TRIAL**

10     A trial court may grant a new trial if "the verdict is

11 contrary to the clear weight of the evidence, or is based upon

12 evidence which is false, or to prevent, in the sound discretion of

13 the trial court, a miscarriage of justice." <u>Roy v. Volkswagen of</u>

14 <u>America, Inc.</u>, 896 F.2d 1174, 1176 (9th Cir. 1990)(citations

15 omitted).  "While the trial court may weigh the evidence and

16 credibility of the witnesses, the court is not justified in

17 granting a new trial 'merely because it might have come to a

18 different result from that reached by the jury.'" <u>Id.</u>, citing

19 <u>Wilhelm v. Associated Container Transportation (Australia) Ltd.</u>,

20 648 F.2d 1197, 1198 (9th Cir. 1981).[2]

21     The court finds that the verdict was not "contrary to the

22

_____

23     [1]    One issue has been returned to the parties for further
   briefing. Thus this order does not resolve all the matters pending
24 before the court.

25     [2]    Put slightly differently, the parties asked for a jury
   verdict, which is what they got.  The fact that plaintiff does not
26 like that verdict is hardly an excuse to undo the trial.

                                  2

1   clear weight of the evidence," <u>Roy v. Volkswagen</u>, 896 F.2d at 1176.

2   Two pieces of evidence clearly and directly support the jury's

3   verdict.  First, in an internal EID e-mail, Len Marino explains to

4   the EID Board that Project 184 has "operated with no forced outages

5   exceeding 8 hours in duration since July 17, 2003 through June

6   2005. That's **758 days!**" <u>See</u> Trial Ex. 448 (emphasis in original).

7   This e-mail supports a finding that the tunnel was working.  The

8   second piece of evidence is a construction status report for the

9   month of July 2003 submitted by EID to the Regional Engineer of the

10  Federal Energy Regulatory Commission ("FERC").   This letter

11  explained that the project (building the Mill Bull tunnel) was 98%

12  completed. <u>See</u> Trial Ex. 472.

13      In sum, the jury had before it evidence that TBI's "fix" was

14  entirely successful.  The jury could easily credit that evidence

15  and conclude that the EID suffered no cognizable injury.[3]  In light

16  of this evidence, the court cannot conclude that "the verdict [was]

17  contrary to the clear weight of the evidence." <u>Roy v. Volkswagen</u>,

18  896 F.2d at 1176.  For these reasons and for the reasons discussed

19  in TBI's opposition to the motion for new trial, the court DENIES

20  EID's motion.

### II.

### EID'S RENEWED RULE 50 MOTIONS

23      EID filed three renewed motions for judgment as a matter of

---

25      [3]    Or conceivably, only an injury sufficient to justify the
    difference in the judgment and that which defendants asked the jury
26  to award TBI.

law.   A party may renew its motion for judgment as a matter of law,

> [i]f for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after the entry of judgment.

Fed. R. Civ. P. 50(b). A renewed motion for judgment as a matter of law is proper when the evidence construed in the light most favorable to the non-moving party permits only one reasonable conclusion as to the verdict and that conclusion is contrary to the jury's verdict.  See Air-Sea Forwarders, Inc. v. Air Asia Co., 880 F.2d 176, 181 (9th Cir. 1989).

Two of the three motions are quickly resolved.  EID's motion on TBI's cause of action for breach of the covenant of good faith and fair dealing, as well as EID's motion regarding EID's breach of contract claim and TBI's breach of contract claim are denied for the reasons set forth in TBI's oppositions.

EID's third motion, that, as a matter of law TBI failed to prove certain damages, requires closer analysis.  As discussed at oral argument, the court requests that TBI submit a brief which sets forth the evidence it believes supports the award of damages. The brief shall be limited to thirty (30) pages and shall be submitted to the court not later than thirty days from the date of this order.  EID shall file a response, also not in excess of thirty pages, which shall be due twenty one (21) days later.  The

1  matter will stand submitted.

2                              **III.**

3                  **TBI'S MOTION FOR ATTORNEYS' FEES**

4       TBI and Travelers seeks $3,567,646.00 in attorneys' fees.

5  EID, however, claims that TBI is not entitled to attorneys' fees

6  pursuant to the performance bond and contract.  EID also alleges

7  that TBI's fees are neither reasonable or necessary.  If attorneys'

8  fees are awarded to TBI/Travelers, EID asks that the amount be

9  reduced by $1,296,028.40.

10      Before addressing the reasonableness of the attorneys' fees

11 award, the court must first determine if the contract provides for

12 attorneys' fees.

13 **A.   Applicable Law**

14      Where, as here, the suit was based on California substantive

15 law, an award of attorneys' fees incurred in the suit is governed

16 by that state's law.  See Kona Enters., Inc. v. Estate of Bishop,

17 229 F.3d 877, 883 (9th Cir. 2000).  Under California law, a

18 prevailing party is ordinarily not entitled to attorneys' fees

19 unless the parties have previously agreed to the fees, or the fees

20 are otherwise provided by statute.  See Lerner v. Ward, 13 Cal.

21 App. 4th 155 (1993)(citing, inter alia, Reynolds Metals Co. v.

22 Alperson, 25 Cal. 3d 124 (1979)).[4]

23      California Civil Code Section 1717(a), provides:

24           In any action on a contract, where the contract

25 _____

26      [4]  It undisputed that TBI is the prevailing party in this
   action.

                              5

specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Where a contract provides for attorney's fees, as set forth above, that provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract.

West's Ann. Cal. Civ. Code § 1717(a). The California Supreme Court has stated that "[w]hen a party obtains a simple, unqualified victory by completely prevailing on or defeating all contract claims in the action and the contract contains a provision for attorney fees, section 1717 entitles the successful party to recover reasonable attorney fees incurred in prosecution or defense of those claims." Scott Co. v. Blount, Inc., 86 Cal. Rptr. 2d 614, 618 (1999).

**B.   Whether the Contract Provides for Attorneys' Fees**

The provision giving rise to TBI's claim for attorneys' fees is found in the performance bond.  The bond provided in relevant part:

1.   Contractor and Surety, jointly and severally, bind themselves . . . to Owner for the performance of the Construction Contract, which is incorporated by reference.

9.   Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction. The prevailing party in any such action shall be entitled to recover its attorneys' fees, to be taxed as an item of costs.

6

1    EID maintains that the attorneys' fees provision in the Bond

2   is limited only to the bond and does not apply to actions brought

3   under the contract more generally.  See EID Opp'n to TBI's Mot. for

4   Attorneys' Fees ("TBI Opp'n") at 3.  TBI, however, argues that the

5   performance bond and contract were integrated and therefore, the

6   attorneys' fees provision applies to the entire contract.

7    Both the facts and the law suggest that the attorneys' fees

8   provision in the bond applies to the entire contract.  It is

9   undisputed that the bond is a contract document.  The "general

10  definitions"  of  the  contract  expressly  provides  that  the

11  performance bond and warranty bond are  contract documents.  See

12  Contract General Conditions, Trial Ex. 398, Part 1 - Definitions.

13  The contract language also provides: "[t]he contract documents are

14  complementary; what is called for by one is as binding as if called

15  for by all."  See Contract General Provisions, Trial Ex. 398,

16  Section 3.01.A.

17   Viewing the bond as part of the contract is consistent with

18  well established California law.  Indeed, "as a  general rule, a

19  contract performance bond will be read with the contract." Pacific

20  Employers Ins. Co. v. City of Berkeley, 158 Cal. App. 3d 145, 150

21  (1984).   As  the  California  Civil  Code  provides:  "Several

22  contracts relating to the same matters, between the same parties,

23  and made as parts of substantially one transaction, are to be taken

24  together."  Cal. Civ. Code § 1642.

25    In Pacific Employers the Court of Appeals found that a

26  performance bond and contract should be read together.  In support

7

of this finding, the court cited to a long, but helpful, excerpt

from Couch on Insurance (2d ed. 1982) § 47:137:

> Since the express purpose of the contract performance bond is to secure the performance of the specified contract, it is obvious that the bond and the contract ... should be construed together - this for the obvious reason that when a party enters into a contract to do certain work on certain terms, and procures a surety to guarantee the faithful performance of the work, the surety necessarily contracts with reference to the contract as made; otherwise it would not know what obligation it was assuming. And this is particularly so where the bond expressly declares that the contract is made a part of the bond and the terms of the contract are incorporated into the bond.
>
> Otherwise stated, the liability of a surety on a contractor's performance bond does not rest solely on the terms of the bond, but grows out of and is dependent upon the terms of the contractor's contract, for the obvious reason that there can be no obligation on the part of the surety unless there has been a default by the contractor on his contract.

Pacific Employers Ins. Co., 158 Cal. App. 3d at 150-151. Here, it

is clear that the bond and the contract were part of the same

transaction and involved the same parties. It is undisputed that

the bond was specifically executed by TBI and EID in conjunction

with the contract which provided for the construction of the Mill

Bull tunnel. See also Continental Cas. Co. v. Hartford Acc. &

Indem. Co., 243 Cal. App. 2d 565, 568 (1966)(finding that when a

contractor's bond incorporates by reference the contract between

the owner and the contractor, all provisions of the contract become

provisions of the bond); Gordy v. United Pac. Ins. Group, 243 Cal.

App. 2d 445, 448(1966)("It is axiomatic that when a bond refers to

a contract in such terms as to incorporate it within the bond, its

1   construction is determined by viewing both the contract and the

2   bond."); Myers Building Industries, Ltd. v. Interface Technology,

3   Inc., 13 Cal. App. 4th 949, 967 (1993) ("Several documents

4   concerning the same subject and made as part of the same

5   transaction will be construed together even if the documents were

6   not executed contemporaneously.")

7       Other courts have also concluded that an attorneys' fees

8   provision contained in one contract document is properly construed

9   as applying to the contract as a whole. See Neptune Society Corp.

10  v. Longanecker, 194 Cal. App. 3d 1233, 1250 (1987) ("Since the

11  promissory notes were inherent parts of the agreement, which is the

12  subject matter of the litigation, the attorney's fees provisions

13  [contained in the notes] are properly construed as applying to the

14  entire contract."); see also Torrey Pines Bank v. Hoffman, 231 Cal.

15  App. 3d 308, 326 (1991).

16      The court concludes that the contract, which includes the

17  bond, provides for attorneys' fees.  Therefore, as the prevailing

18  party, TBI is entitled to attorneys fees pursuant to California

19  Civil Code Section 1717.[5]  The court turns next to EID's contention

20  that TBI's attorneys' fees are neither reasonable nor

21

22      [5] The parties' briefs contain lengthy discussions about the
    applicability of California Public Contract Code Section 7107.  TBI
23  maintains that it is also entitled to attorneys' fees under this
    section of the Code.  Given that the court has concluded that TBI
24  is entitled to fees under California Civil Code Section 1717, the
    court need not also determine if TBI could also recover under
25  Section 7107.  To the extent it is applicable, this section is
    discussed with respect to TBI's motion for prejudgement interest.
26

9

necessary.[6]

## C.   EID's Objections to TBI's Requests for Attorneys' Fees

### 1.   Fees for Work On Fraud and False Claims Act Causes of Action

EID objects to the attorneys' fees incurred by TBI to defend against the California False Claims Act ("FCA") and fraud claims. Citing to no legal authority, EID requests that $232,175.00 be deducted from TBI's total attorneys' fees award.  The court cannot comply with plaintiff's request.

It is well established that attorneys' fees "need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed."  Reynolds Metals Co. v. Alperson, 25 Cal. 3d 124, 129-130 (1979); see also Abdallah v. United Sav. Bank, 43 Cal. App. 1101, 1113 (1996)(holding that attorney's fees did not need to be apportioned between causes of action for contract, fraud, and RICO violations because the various claims were inextricably intertwined).

In the case at bar, the fraud and FCA claims were "inextricably intertwined" with the contract claims.  Both deal with the Mill Bull tunnel contract, and the events surrounding the

---

[6]    The court only addresses those fees which are disputed. EID does not, for example, dispute counsels' hourly rates and therefore, the court assumes that the hourly rates are undisputed. It is worth noting, however, that TBI submitted ample evidence that the rates requested reflect the reasonable market value.  See Declarations of Kenneth R. Stone, Kenneth M, Malovos, Michael D. Welch and Tina A. Thomas.

1  building of the tunnel.  For these reasons, the court will not

2  segregate out the fees incurred regarding the fraud and FCA claims.

3      **2.  Staffing Level At Trial**

4      EID asserts that TBI was "overstaffed" at trial.  EID argues

5  that TBI impermissibly seeks compensation for courtroom trial time

6  of counsel Mark Budwig, Michael McGuinness, Steven Owen, and

7  paralegal Michelle May, "all of whom were in the courtroom almost

8  continuously throughout the trial."  EID Opp'n at 25.  In contrast,

9  "for most of the trial Eric Firstman was the only trial lawyer in

10 the courtroom for EID, and his assistant, Maria Medrano, did not

11 bill EID for her time."  Id.  EID asks that TBI be awarded only the

12 cost of one lawyer in the courtroom, reducing its fee award by

13 $89,510.00.[7]

14     Both the law and motion practice and the trial were protracted

15 and complicated.  Counsel for both parties were, at times,

16 excessive and extreme in their litigation tactics.  To award fees

17 for three lawyers and one paralegal being present in the courtroom

18 throughout trial does seem excessive.  That said, the court also

19 notes that EID had, on average, two lawyers at counsels' table

20 throughout the trial, which was hardly unreasonable.  Therefore,

21 the court finds it reasonable to award attorneys fees for the time

22 that both Mr. McGuinness and Mr. Budwig spent in the courtroom.

23 Accordingly, the court will deduct $34,286.00 for the amount of

24 _____

25     [7] The court will not comment on whether plaintiff's judgment
   as to staffing was objectively appropriate, given the complexity
26 and length of the trial.

1  time spent by paralegal Michelle May in court, during trial.[8]

2      **3.   In-house Counsel Hours**

3      EID argues that TBI is not entitled to recover attorneys fees

4  for Mr. Steven Owen, as Mr. Owen is in-house counsel for TBI.  EID

5  asks that the court strike $255,155.00 from the overall award.  Mr.

6  Owen requests $334,775.00 for 956.5 hours (at a rate of $350/hr).

7      The California Supreme Court has allowed a corporation that

8  was represented by in-house counsel to recover attorneys' fees. See

9  PLCM Group, Inc. v. Drexler, 22 Cal. 4th 1084 (2000).  In the case

10 at bar, however, TBI fails to distinguish when Mr. Owen was in fact

11 "representing" TBI as a lawyer and when he was acting as a client

12 representative.   Accordingly, the court concurs with EID and

13 deducts those hours that Mr. Owen appears to have been acting as

14 a client representative and not as an attorney.  For these reasons,

15 the court deducts $255,155.00 from TBI's total award of attorneys'

16 fees.

17      **4.   Fees for Injunctive Relief Claim**

18     EID objects to TBI recovering fees for labor spent on TBI's

19 motion for a preliminary injunction and Ninth Circuit appeal.  EID

20 asks that the attorneys' fee award be reduced by $208,201.90.

21     The court cannot agree.  A prevailing party is entitled to

22 ─────────────────

23     [8]   Although TBI objects to the billing of three lawyers
   during trial, TBI fails to explain how it calculated the time spent
24 in trial by Mr. Owen.   In her declaration, Ms. Cox (an attorney
   for EID), simply states that the calculation accounted for hours
25 spent in trial by Mr. Budwig, Mr. McGuinness and Ms. May.   There
   is no mention of Mr. Owen.   See Cox Decl.   ¶ 8.   Therefore, the
26 court sees no need to deduct anything beyond the amount of time
   spent by Ms. May in court during trial.

1  compensation for all hours reasonably spent on the litigation.

2  Serrano v. Unruh, 32 Cal. 3d 621, 639 (1982).  Here, the motion for

3  a preliminary injunction was reasonable.  The issues in the motion

4  were similar to the issues litigated in motion practice and at

5  trial, to wit, the termination of the contract and the DRB

6  proceedings.  See, e.g., Monroe v. United Air Lines, Inc., 565 F.

7  Supp. 274, 286 (N.D. Ill. 1983) (party entitled to recover fees for

8  unsuccessful motion for a preliminary injunction where motion was

9  based on identical facts and legal theories that underpinned their

10  ultimate success on the merits).

11          **5.   Theodore Drear's Fees**

12          In August of 2005, Theodore Drear, one of McKenna's primary

13  associates who worked on this case, left the McKenna firm.  EID

14  avers that when Mr. Drear left, "his time was lost as his

15  replacement, Laurence Phillips, learned the case."  EID's Opp'n at

16  26-27.  EID asks that Mr. Drear's time be written down, as well as

17  Mr. Phillips' learning time, in the amount of $2,348.00.  Neither

18  party points to any legal authority on the matter.

19          This case was litigated extensively.  By August of 2005,

20  hundreds of pages of briefs and exhibits had been filed with this

21  court.  Both parties are responsible for the volumes of paper in

22  this case.  Although attorney turn-over is an inevitable part of

23  practice, the fact remains that because of the size of the case and

24  the record, the learning time for Mr. Phillips was uniquely labor

25  intensive.  Therefore, the court agrees with EID that the attorneys

26  fee award should be reduced in the amount of $2,348.00.

### 6.   Pre-Litigation Fees

TBI seeks attorneys fees for Peter Ippolito.  EID asserts that Mr. Ippolito was only nominally involved in the case, as "he never appeared in court and appears to have turned over the handling of this matter to others shortly before litigation began." EID Opp'n at 27.  EID seeks to have $51,689.00 deducted from the final award. This sum reflects the amount of time spent by Mr. Ippolito prior to the filing of the case and for time spent on work that does not appear related to the case.

In reviewing the time records for Mr. Ippolito it appears that some of his billed hours are not related to this litigation.  For example, on May 7, 2003, Mr. Ippolito allegedly spent two hours "preparing for trial."  However, the complaint in this case was not even filed until the summer of 2003.  Not only was there no trial date set in May of 2003, the case had not even been filed. Similarly, on November 4, 2002, almost nine months before a complaint was filed, Mr. Ippolito spent eight hours on the case, yet the narrative on the time sheet just states "attended meeting." TBI fails to explain how these hours related to pre-litigation conduct connected to this case and on what legal grounds counsel may recover pre-litigation fees.

In light of these ambiguities, the court agrees with EID and accordingly, the award will be reduced by $51,689.00.

### 7.   Paralegal Fees

TBI seeks paralegal fees in the amount of $300,937.00.  EID suggests that the fees for paralegals is inappropriate because the

14

law is not clear that paralegals are entitled to fees.   EID also objects to Ms. May billing at a slightly higher rate than her predecessor.   To the extent that the court does award fees for paralegals, EID requests that $18,849.00 be deducted from the final award.

Awarding fees for the work of paralegals is common place. See Sundance v. Municipal Court, 192 Cal. App. 3d 268, 274 (1987). See also Cook v. Brown, 68 F.3d 447, 453 (Fed. Cir. 1995)("The Supreme Court, and lower courts, have approved the inclusion of fees for paralegals, law clerks, and law students. . . on the theory that their work contributed to their supervising attorney's work product, was traditionally done and billed by attorneys, and could be done effectively by non-attorneys under supervision for a lower rate, thereby lowering overall litigation costs."); Guinn v. Dotson, 23 Cal. App. 4th 262, 268 (1994).  In light of the clear weight of legal authority, the court finds it appropriate to award attorneys' fees for work done by paralegals.    With respect to the rate billed by Ms. May, EID fails to demonstrate how a rate of $30 per hour is unreasonable in light of her experience or reasonable market rate.   For these reasons, the court will not strike any of the attorneys' fees award with respect to paralegal work.[9]

### 8.   Alleged Pretrial Misconduct

EID asserts that "TBI should not be awarded attorney fees for

---

[9] The exception being the hours billed for Ms. May during trial, which was previously addressed in this order.

1   work that involved addressing its own pretrial misconduct, such as

2   its failure to look for electronic documents." EID Opp'n at 28.

3   In light of this alleged misconduct, EID asks that $138,694.00 be

4   deducted from the final fee award.

5       Throughout the course of this case, both parties have engaged

6   in very aggressive litigation tactics.  Indeed, EID accusing TBI

7   of misconduct is not unlike the pot calling the kettle black.

8       That said, EID's definition of "misconduct" is unclear and

9   overly broad.  For example, EID claims that on March 16, 2004, TBI

10   engaged in misconduct when it "prepared correspondence in response

11   to EID's March 12 and 15 letters about discovery extension and an

12   order shortening. . ." It is not clear why this work should be

13   characterized as "misconduct" as opposed to typical litigation

14   practice.  This is one example of hundreds.  The court does not

15   have the time or inclination to review hundreds of pages of time

16   sheets to determine which actions should be characterized as

17   "misconduct" and therefore deducted from the overall award.

18   Accordingly, the court will not reduce the award of attorneys fees

19   based on alleged misconduct.

20       **9.   Miscellaneous**

21       EID asserts that several tasks which TBI billed for should not

22   be included in an award for attorneys' fees.  The court agrees with

23   EID that there are a handful of hours billed on the time sheets

24   that seem improper.  For example, TBI billed for time spent

25   reviewing local media and writing press releases.  There is

26   similarly an entry about a "new secretary issue." These activities

cannot properly be characterized as legal work, thereby justifying attorneys' fees. However, the amount that EID proposes deducting, $17,318.00, seems extreme and it is not clear how EID arrived at this number. In reviewing EID's calculations as well as the time sheets submitted by TBI, the court concludes that $3,079.00 is the proper amount to deduct.

### 10. Fees related to Travelers

Lastly, EID asserts that the McKenna firm billed TBI only and were paid by TBI only. "Accordingly, Travelers has no right to recover on any part of McKenna's bill, because Travelers sustained no damages for those charges." EID Opp'n at 29. It is unclear what EID means by this statement. Indeed, a review of TBI's papers reveals that there was an agreement between TBI and Travelers as to how fees should be paid. EID presents no compelling reason as to why the court should disturb this arrangement or in any way adjust the amount of fees that pertain to Travelers. See Decl. of Pam Ebert, ¶ 3-4.

### C. Final Calculation of Attorneys' Fees

For the reasons explained, the following amount is awarded as attorneys' fees:

| | | |
|---|---|---|
| **Amount Requested:** | $3,567,646.00 | |
| **Deductions:** | -$34,286.00 | Overstaffing at trial. |
| | -$255,155.00 | In-House Counsel Fees. |
| | -$2,348.00 | Fees for staff turnover. |
| | -$51,689.00 | Preligitation work of Mr. Peter Ippolito. |

1             -$3,079.00     Miscellaneous.

2 **Final Award:**     = $3,221,089.00

3

4           **IV.**

5       **TBI'S BILL OF COSTS**

6     TBI submits its Bill of Costs for $94,615.21.  This sum

7 includes the cost of transcripts, copies of deposition transcripts,

8 copying costs and witness expenses.  EID objects to $84,490.28 of

9 the costs on the grounds that these costs have not been shown to

10 have been necessarily obtained for use in the case.

11 **A.   Applicable Standard**

12     Costs are awarded under the authority of 28 U.S.C. § 1920,

13 which provides:

14         A judge or clerk of any court of the United
        States may tax as costs the following:
15         (1) Fees of the clerk and marshal;
        (2) Fees of the court reporter for all or any
16         part of the stenographic transcript
        necessarily obtained for use in the case;
17         (3) Fees and disbursements for printing and
        witnesses;
18         (4) Fees for exemplification and copies of
        papers necessarily obtained for use in the
19         case;
        (5) Docket fees under section 1923 of this
20         title;
        (6) Compensation of court appointed experts,
21         compensation of interpreters, and salaries,
        fees, expenses, and costs of special
22         interpretation services under section 1828 of
        this title.
23         While courts are limited to those sections
        enumerated, courts are also free to interpret
24         the meaning of cost within section 1920.

25

26         "[T]he procedures set forth in section 1920 . . . are not

1  mere formalisms." <u>Mason v. Belieu</u>, 543 F.2d 215, 222 (D.C. Cir.

2  1976).   Courts are free to interpret the meaning of the items

3  designated by Section 1920.   <u>Aflex Corp. v. Underwriters Lab.</u>,

4  914 F.2d 175, 177 (9th Cir. 1990).   The items most germane to

5  this case which have been interpreted to fall within Section 1920

6  include the cost of daily transcripts, <u>A. B. C. Packard, Inc. v.</u>

7  <u>General Motors Corp.</u>, 275 F.2d 63, 74 (9th Cir. 1960), deposition

8  transcripts, <u>Evanow v. M/V Neptune</u>, 163 F.3d 1108, 1118 (9th Cir.

9  1998), copies of deposition transcripts, <u>Aflex</u>, 914 F.2d at 177,

10  copies of documents necessarily obtained for use in the case,

11  <u>Haagen-Dazs v. Double Rainbow Gourmet Ice Creams, Inc.</u>, 920 F.2d

12  587, 588 (9th Cir. 1990), and costs for exemplification fees,

13  <u>Most v. Am. Fed'n of Musicians of the United States</u>, 7 Fed. Appx.

14  551, 553 (9th Cir. 2001).

15      Once an item is identified as being of the type enumerated,

16  the power to tax such costs is qualified only by the requirement

17  that they be necessarily obtained for use in the case.   <u>Aflex</u>,

18  914 F.2d at 177.   The court should either allow costs or state

19  the reasons for denying them.   <u>Trans Container Serv.   (BASEL</u>

20  <u>A.G.) v. Sec. Forwarders, Inc.</u>, 752 F.2d 483, 488 (9th Cir.

21  1985).

22  **B.   Court Reporter Fees**

23      **1. Cost of Daily Transcripts**

24      TBI seeks to bill $50,120.57 as taxable costs to EID for

25  Court Reporter Fees.   Of that, $20,810.49 is for the cost of

26  producing a daily transcript.   Both parties had requested a daily

1  transcript and agreed to split the cost.  The amount of
2  $20,810.49 represents TBI's share of the cost.  In light of the
3  agreement between the parties to split the costs, the court
4  deducts $20,810.49 from TBI's Bill of Costs.

5              **2. Deposition Costs**

6      The remainder of what TBI seeks to tax under Court Reporter
7  Fees are for transcriptions of depositions in the amount of
8  $29,310.08.  EID objects to most of these depositions.

9      First, EID objects to $9,332.20 for depositions taken by TBI
10  of EID's current employees who were available as witnesses at
11  trial.   Second, EID objects to $4,365.96 for copies of
12  depositions that EID took of TBI's witnesses.  Third, EID objects
13  to $3,575.47 for third party witnesses that did not testify at
14  trial, and finally, EID objects to $2,664.82 for transcripts of
15  TBI's own experts.  The remaining costs under this heading,
16  $9,310.08, are not contested.

17      It is well established that the cost of depositions is
18  encompassed by Section 1920(2).  Alflex Corp., 914 F.2d at 177.
19  This circuit has instructed that "deposition costs are taxable
20  if they are reasonably necessary for trial." Evanow, 163 F.3d at
21  1118; see also Washington State Dept. of Transp. v. Washington
22  Natural Gas Co., Pacificorp, 59 F.3d 793, 806 (9th Cir.
23  1995)("disallowance for expenses of depositions not used at trial
24  is within the district court's discretion."); but see Independent
25  Iron Works, Inc. v. U.S. Steel Corp., 322 F.2d 656, 678 (9th Cir.
26  1963)("[i]f the depositions [are] merely useful for discovery

1  then they [are] not taxable items and their expense should [be]

2  borne by the party taking them, as incidental to normal

3  preparation for trial.")

4      In the case at bar, EID objects to almost all of the

5  depositions which were used in this case.  The objections are,

6  or are close to, frivolous.  Therefore, the court does not make

7  any deductions with respect to the costs of deposition

8  transcripts.

9  **C.  Witness Fees**

10     TBI seeks to tax fees for witnesses in the amount of

11 $3,459.65.  EID objects to $2,080.50 of these costs as they were

12 expended primarily for the travel costs of a current TBI

13 employee.

14     Parties are generally not able to recover witness fees for

15 their own trial attendance.  Barber v. Ruth, 7 F.3d 636, 646 (7th

16 Cir. 1993).  However it is proper for the court to assess witness

17 fees for directors and officers of a corporate party who are not

18 personally involved in the litigation.  See Kemart Corp. v.

19 Printing Arts Research Labs., Inc., 232 F.2d 897, 901-902 (9th

20 Cir. 1956).

21     As TBI properly points out, Mr. Cangelosi is not a party to

22 this litigation; rather, he is an employee of a corporate party,

23 to wit, TBI.  Such costs are properly included in the amount of

24 witness fees, and $3,459.65 for witness fees and expenses

25 (including witness fees for Mr. Cangelosi) are granted.

26 **D.  Fees for Exemplification and Copies**

21

1    TBI requests $41,034.99 for costs associated with

2 photocopying, scanning, electronic duplication, and

3 exemplification as part of its Bill of Costs. EID objects to all

4 but $3,867.93 of this amount as not having been shown to be

5 necessarily obtained.

6    The power to tax the cost of copies is qualified only by the

7 requirement that the copies be necessarily obtained for use in

8 the case. Aflex, 914 F.2d at 177. The phrase "necessarily

9 obtained for use in the case" encompasses more than the copying

10 costs of only those documents actually used in the case and made

11 part of the trial record. See Haagen-Dazs Co., 920 F.2d at 588

12 ("Section 1920(4) enables a court to award copying costs for any

13 document 'necessarily obtained for use in the case' and does not

14 specifically require that the copied document be introduced into

15 the record to be an allowable cost."). That said, the costs of

16 copies may not include every document "that may pass through a

17 law firm's xerox machines." Fogleman v. ARAMCO, 920 F.2d 278,

18 286 (5th Cir. 1991). See also 6 Moore's Federal Practice ¶

19 54.77[6], p. 54-465 (2d ed. 1988) (a document "may be

20 'necessarily obtained for use in the case' though it is not

21 offered in evidence at a hearing or trial.").

22    In support of its Bill of Costs for copies, TBI submitted

23 sixty-four pages of receipts. The only summation and explanation

24 of charges is on TBI's Schedule E, which concludes:

25    Copy Charges:          $27,791.73

26    Scan Charges:          $10,966.13

22

1    Electronic Duplication:   $775.68

2    Blow up and mounting:     $ 1,501.45

3    The court does not have the time nor the inclination to

4  decipher which copies were necessary and which were not.  Some

5  of the invoices for copy services have handwritten notes which

6  demonstrate that the "necessity" of the copies is questionable.

7  For example, one receipt has a note stating "scan/OCR milk crates

8  and binders from George Mitteer's files."  Mr. Mitteer is an

9  employee of TBI.  No explanation is offered as to what "OCR milk

10 crates and binders" are, or why copies of them were necessarily

11 obtained.

12    Put simply, not enough has been done to explain and justify

13 these costs.   The mere recital of the phrase "necessarily

14 obtained" is not enough to justify copy costs of $41,034.99.

15 The court cannot say with certainty that all the copies were

16 necessarily obtained for use in the case.   The court is

17 confident, however, that given the length and complexity of the

18 case, the number of copies "necessarily obtained" is not lower

19 than three fourths of the copies billed for.

20    TBI also asserts that scanning a document should be included

21 under Section 1920 because it is akin to copying.  Documents that

22 are scanned can be entered into a computer and then be used to

23 make exhibits for exemplification.   The court agrees that

24 scanning is akin to photocopying.   The purposes of the two

25 methods are largely the same, to reproduce a document so that it

26 may also be utilized by multiple parties and individuals.

The cost of making CDs of scanned documents is for the convenience of counsel.  These costs should not be included in the final Bill of Costs.  In one instance, TBI billed for 19 copies of a CD at a cost of $25.00 per CD.  This is an example of items which do not appear to be necessary for use in the case. Accordingly, the court will not award costs for electronic duplication.

In conclusion, the court awards costs for three fourths the copying and half the scan charges, no costs for electronic duplication and the amount of costs requested for blow-up and mounting.  The award of costs for copying is summarized below:

Copy Charges:              $20,843.81(three    fourths of
                           27,791.72 requested by TBI).

Scan Charges:              $5,483.00    (half  of $10,966.13
                           requested by TBI).

Electronic Duplication:  $ 0.00

Blow up and mounting:    $ 1,501.45

TOTAL AWARD:             $ 27,827.45

**E.    Final Calculation of Bill of Costs**

For the reasons discussed herein, the court awards costs as follows:

**Amount Requested:**      $ 94,615.21

**Deductions:**            - $20,810.49  Cost of daily transcript.

                           - $13,207.54  Excessive copy costs.

**TOTAL COSTS:**           = $ 60,597.18

**V.**

24

## TBI'S MOTION FOR PREJUDGMENT INTEREST

TBI asserts that it is entitled to prejudgment interest on the damages awarded pursuant to California Civil Code, Sections 3287 and 3289 at a rate of 10 % per year.  TBI also seeks interest of 2% per month on retention funds "improperly withheld by EID" pursuant to California Public Contract Code Section 7107(f).  See TBI Mot. for Prejudgment Interest at 1.

TBI seeks either $3,224,400 (monthly interest at 2% on retention and annual interest at 10% on balance of judgment); or $2,076,686 (just annual interest at 10% on entire judgment).  EID objects on the grounds that the amount of damages was unliquidated and uncertain.  For the reasons explained herein, the court declines to award any prejudgement interest.

## A.   Applicable Law

California Civil Code Section 3287 provides:

§ 3287.  Authorization

(a) Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt. This section is applicable to recovery of damages and interest from any such debtor, including the state or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the state.

(b) Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed.

1

2 Cal. Civ. Code § 3287.   The interest rate of 10% per year is

3 provided for in California Civil Code Section 3289.

4      As a general rule, "prejudgment interest is awarded only

5 when the sum is liquidated within the meaning of the statute."

6 Fireman's Fund Ins. Co. v. Allstate Ins. Co., 234 Cal. App. 3d

7 1154, 1172 (1991).   However, as one California court aptly

8 remarked, "the statutory test 'capable of being made certain by

9 calculation' is not an easy one to apply.'" Marine Terminals Corp

10 v. Paceco, Inc., 145 Cal. App. 3d 991, 995 (1983).   The

11 certainty requirement of Section 3287(a) has been reduced to two

12 tests: "(1) whether the debtor knows the amount owed, or (2)

13 whether the debtor would be able to compute the damages."

14 Fireman's Fund, 234 Cal. App. 3d at 1173 (internal citations

15 omitted).   See also Chesapeake Industries, Inc. v. Togova

16 Enterprises, Inc., 149 Cal. App. 3d 901, 907 (1983) (explaining

17 test as: "did the defendant actually know the amount owed or from

18 reasonably available information could the defendant have

19 computed that amount.   Only if one of those two conditions is met

20 should the court award prejudgment interest.")

21      Damages are considered certain when there is no dispute as

22 to the amount of damages, and instead, the dispute centers on

23 whether the debtor is liable for the damages. Stein v. Southern

24 Cal. Edison Co., 7 Cal. App. 4th 565, 571 (1992) (explaining that

25 "damages are deemed certain or capable of being made certain . .

26 . where there is essentially no dispute between the parties

26

1 concerning the basis of imposition of damages that are

2 recoverable but where the dispute centers on the issue of

3 liability giving rise to the damage.")

4 The code does not authorize prejudgment interest where the

5 amount of damages, as opposed to the determination of liability,

6 "depends upon a judicial determination based upon conflicting

7 evidence and is not ascertainable from truthful data supplied by

8 the claimant to his debtor." Fireman's Fund, 234 Cal. App. 3d at

9 1173. Stated somewhat differently, "interest is not allowable as

10 a matter of right where the amount of damages is unliquidated and

11 depends upon the jury's resolution of conflicting evidence."

12 Marine Terminals Corp, 145 Cal. App. 3d at 995.

13 Further, "the cases indicate that where there is a large

14 discrepancy between the amount of damages demanded in the

15 complaint and the size of the eventual award, that fact militates

16 against a finding of the certainty mandated by [Civil Code

17 section 3287]." Polster, Inc. v. Swing, 164 Cal. App. 3d 427,

18 435 (1985). Conversely, where there is no significant disparity

19 between the amount claimed in the complaint and the final

20 judgment, this factor generally tends to show that damages were

21 certain or capable of calculation. Wisper Corp. v. California

22 Commerce Bank, 49 Cal. App. 4th 948, 961 (1996). The greater the

23 disparity between the amount claimed and the amount rewarded,

24 however, the less likely prejudgment interest is appropriate.

25 Id.

26 **B.    Whether TBI's Total Damages Are "Certain"**

1        In light of the facts and circumstances of this case, it is

2   impossible to conclude that TBI's damages were "certain" as

3   defined by Section 3287.  There is clearly "conflicting evidence"

4   which would bar application of the code.  <u>See</u> <u>Fireman's Fund</u>,

5   234 Cal. App. 3d at 1173.

6        Most obviously, the amount awarded by the jury was not the

7   total amount of damages that TBI sought.  TBI submitted a claim

8   for $6,578,817.00 and was awarded $6,264,312.00.  The difference

9   between the amount claimed and the amount awarded is $314,505.00,

10  or 5% of the original amount requested.  TBI's accounting expert,

11  Robert Taylor, posits that the jury did in fact grant full relief

12  on unpaid retention (in the amount of $2,588,812.00) and that the

13  remainder of the jury's award was divided among TBI's other

14  claims for damages, such as delay after hole through

15  ($2,080,000.00), and adjustments for unit quantities ($890,000),

16  among others.  <u>See</u> Taylor Decl. Ex. 1.

17       Concluding that the $2,588,812.00 is the amount the jury

18  awarded for the unpaid retention is pure speculation.  Indeed, it

19  is just as possible that the jury awarded damages for the other

20  elements of TBI's damages claims and not for the unpaid

21  retention.  The fact that the jury did not award TBI the sum it

22  was seeking indicates that the jury found that there was some

23  dispute over the amount of damages which could not be easily

24  resolved.

25       Moreover, a discrepancy between the amount claimed and the

26  amount awarded is a factor that suggests that the amount of

28

damages was unliquidated.  <u>Polster</u>, 164 Cal. App. 3d at 435.  As a whole dollar amount, $314,505.00 is a large number, as a percentage of the total amount claimed, less than 5%, appears less significant.  Nonetheless, this 5% discrepancy suggests that the jury had to make a factual determination regarding the damages, rather than merely finding that EID was liable.

The actual amount owed by EID to TBI is also not clear.  For example, on August 27, 2003, TBI submitted a "final application for payment" to EID.  The amount due was listed as $2,236,226.00.  However, TBI now claims that the proper amount of liquidated damages is actually $2,588,812.00.  <u>See</u> TBI's Mot. for Prejudgement Interest.  There is a difference of $350,000 between these two sums.  It is not clear why the amount owed changed over time.  This difference also suggests that the court cannot determine with certainty the amount of damages owed.

It is also not clear if EID provided to TBI all the information necessary for TBI to know the amount owed.  <u>See</u> <u>Chesapeake Industries</u>, 149 Cal. App. 3d at 907 (explaining test as: "did the defendant actually know the amount owed or from reasonably available information could the defendant have computed that amount.")  For example, EID claims that it was unclear in advance of construction exactly what quantity of material or services would be required.  Accordingly, for certain items, TBI billed EID for a "unit price."  At the end of the construction TBI claimed that the cost of construction was increased by $890,000.00 for unit priced material.  EID asserts,

however, that TBI never provided EID with any information on how this unit price was calculated. According to EID, "the unit price items was solely within the knowledge of TBI." EID Opp'n to Mot. for Prejudgment Interest at 6. This situation suggests that EID did not actually know the amount owed.

In light of the forgoing, it is clear that there is a dispute as to the certainty of the liquidated damages. See Stein, 7 Cal. App. 4th at 571. Accordingly, damages are not "capable of being made certain by calculation" as required by Civil Code Section 3287 and thus, TBI cannot recover prejudgement interest pursuant to Section 3278.

**C.   Applicability of Penalty Interest under Public Contract Code Section 7107(f).**

TBI also seeks interest pursuant to Public Contract Code Section 7107(f). Section 7107 provides, in pertinent part:

> (a) This section is applicable with respect to all contracts entered into on or after January 1, 1993, relating to the construction of any public work of improvement.

> (b) The retention proceeds withheld from any payment by the public entity from the original contractor, or by the original contractor from any subcontractor, shall be subject to this section.

> (c) Within 60 days after the date of completion of the work of improvement, the retention withheld by the public entity shall be released. **In the event of a dispute between the public entity and the original contractor, the public entity may withhold from the final payment an amount not to exceed 150 percent of the disputed amount...**

> (f) In the event that retention payments are not made within the time periods required by this section, **the public entity or original contractor withholding the unpaid amounts shall be subject to a charge of 2**

30

> **percent per month on the improperly withheld amount, in lieu of any interest otherwise due.** Additionally, in any action for the collection of **funds wrongfully withheld,** the prevailing party shall be entitled to attorney's fees and costs.

Cal. Pub. Con. Code § 7107 (emphasis added).

It undisputed that EID withheld TBI's retention payment (though, as discussed above, the exact amount is disputed). TBI, however, claims that "there can be no reasonable dispute that with the rejection of EID's claims in their entirety by the jury, and with the award of 95% of TBI's requested damages, the withholding of TBI's retention was improper." TBI Mot. for Prejudgement Interest at 4. TBI explains the various ways it believes that EID's withholding of the funds was not in good faith.

A plain reading of the code indicates that in order to receive the 2% per month penalty interest rate, there must be a showing that the amount was "improperly" and or "wrongfully" withheld. Whether EID improperly or wrongfully withheld the retention amount is a question of fact which the jury did not resolve. It is not clear from the jury verdict if the jury concluded that EID "improperly" withheld the retention amount. Clearly, the jury found that EID breached the contract with TBI when EID failed to pay TBI. It does not follow, however, that a finding of breach of contract conclusively established that EID was improper or wrongful in withholding the retention amounts.

1    Indeed, the California law specifically provides that in the

2    "event of a dispute between the public entity and the original

3    contractor, the public entity may withhold from the final payment

4    an amount not to exceed 150 percent of the disputed amount . . ."

5    Cal. Pub. Con. Code § 7107 (c).   Here, there was clearly a

6    dispute between EID and TBI.   Accordingly, EID was entitled to

7    initially withhold the final payment because there was a dispute.

8    Whether EID acted in a way that was "improper" or "wrongful" is

9    a separate question.   This question was not before the jury and

10   therefore, its verdict cannot be read to include a finding that

11   EID's withholding of the retention amount was "wrongful" or

12   "improper."   Accordingly, EID is not entitled to interest under

13   Section 7107.

14                                **V.**

15                            **CONCLUSION**

16   For the reasons explained, the court orders as follows:

17   1.   EID's Motion for a New Trial is DENIED.

18   2.   EID's Amended Renewed Motion for Judgment as a Matter of Law

19        on TBI's Cause of Action for Breach of the Covenant of Good

20        faith and Fair Dealing is DENIED.

21   3.   EID's Renewed Motion for Judgment as a Matter of Law on: (1)

22        EID's Breach of Contract Claim; and (2) TBI's Breach of

23        Contract Claim are DENIED.

24   4.   The court defers judgment on EID's Renewed Motion for

25        Judgment as a Matter of Law that TBI has failed to prove

26        certain damage claims.   The court requests that TBI submit

                                32

1   a brief which sets forth the evidence it believes supports

2   the award of damages.  The brief shall be limited to thirty

3   (30) pages and shall be submitted to the court thirty days

4   from the date of this order.  EID shall file a response,

5   also not in excess of thirty (30) pages, which shall be due

6   twenty one (21) days later.

7   5.  TBI's Motion for Attorneys' Fees is GRANTED in the amount of

8       $3,221,089.00;

9   6.  TBI's Bill of Costs is TAXED in the amount of $ 60,597.18;

10  7.  TBI's Motion for Prejudgement Interest is DENIED.

11      IT IS SO ORDERED.

12      DATED: February 9, 2007.

13

14

15      LAWRENCE K. KARLTON
        SENIOR JUDGE

16      UNITED STATES DISTRICT COURT

17

18

19

20

21

22

23

24

25

26