1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11  EL DORADO IRRIGATION DISTRICT,
    a political subdivision of the
12  State of California,
                                          NO. CIV. S-03-949 LKK/GGH
13          Plaintiff,

14      v.                                     O R D E R

15  TRAYLOR BROS., INC., an
    Indiana corporation,
16
            Defendant.
17  _____/

18  AND RELATED COUNTER-CLAIMS.
    _____/
19

20      The El Dorado Irrigation District ("EID") filed suit against

21  Traylor Brothers, Inc. ("TBI") as well as Travelers Casualty and

22  Surety Company of America ("Travelers") for breach of contract. TBI

23  filed a counterclaim.  The matter proceeded to trial on September

24  19, 2006.  The jury rendered its verdict on November 30, 2006,

25  concluding that EID breached its contract with TBI and awarded

26  $6,264,312.00 in damages.

                                  1

1   Pending before the court are two matters: EID's renewed rule

2   50(b) motion that TBI failed to prove certain damages claims and

3   TBI's supplemental request for attorneys' fees.   The court

4   addresses each matter in turn.

5                                    **I.**

6                   **EID's Renewed Rule 50(b) Motion**

7   On February 9, 2007, the court deferred judgment on EID's

8   renewed Rule 50(b) motion for judgment as a matter of law that TBI

9   failed to prove certain damages claims.   The court requested

10  further briefing on the matter.   TBI filed a supplemental brief to

11  which EID filed a reply.

12  **A.   Standard of Review under Rule 50(b)**

13  A party may renew its motion for judgment as a matter of

14  law,

15      [i]f for any reason, the court does not grant a motion
        for judgment as a matter of law made at the close of all
16      the evidence, the court is considered to have submitted
        the action to the jury subject to the court's later
17      deciding the legal questions raised by the motion.   The
        movant may renew its request for judgment as a matter of
18      law by filing a motion no later than 10 days after the
        entry of judgment.

19

20  Fed. R. Civ. P. 50(b).   A renewed motion for judgment as a matter

21  of law is proper when the evidence construed in the light most

22  favorable to the non-moving party permits only one reasonable

23  conclusion as to the verdict and that conclusion is contrary to the

24  jury's verdict.   See <u>Air-Sea Forwarders, Inc. v. Air Asia Co.</u>, 880

25  F.2d 176, 181 (9th Cir. 1989).   The motion should be granted "only

26  if the verdict is 'against the great weight of the evidence, or it

2

1  is quite clear that the jury has reached a seriously erroneous
2  result.'" Hangarter v. Provident Life and Acc. Ins. Co., 373 F.3d
3  998, 1005 (9th Cir. 2004)(internal citations omitted). See also
4  Settlegoode v. Portland Public Schools, 371 F.3d 503, 510 (9th Cir.
5  2004)(Explaining that a "district court may set aside a jury
6  verdict and grant judgment as a matter of law only if, under the
7  governing law, there can be but one reasonable conclusion as to the
8  verdict.")

9      Moreover, "[a] party cannot raise arguments in its post-trial
10 motion for judgment as a matter of law under Rule 50(b) that it did
11 not raise in its pre-verdict Rule 50(a) motion." Freund v. Nycomed
12 Amersham, 347 F.3d 752, 761 (9th Cir. 2003), see also Advisory
13 Comm. Notes to the 1991 Amendments, Fed. R. Civ. P. 50 ("A post
14 trial motion for judgment can be granted only on grounds advanced
15 in the pre-verdict motion.")

16 **B.   The Contested Damages**

17     EID's initial Rule 50 motion contested seven of TBI's eight
18 claims for damages.  Specifically, EID claimed that TBI failed to
19 offer proof for five of the claims:  the consumptive water claim,
20 the sedimentation pond claim, the outstanding change order
21 requests, the escalation of labor and power costs, and the extra
22 environmental costs.  EID's Rule 50 Mot. at 2:2-3.  In addition,
23 EID alleged that TBI could not "prove a causal connection between
24 all of their claims (other than for unpaid contract balance) and
25 the damages it allegedly suffered." Id., at 2:3-5.

26     In its Rule 50(b) motion, EID also challenged TBI's damages

1  regarding its proof of the unpaid contract balance. EID
2  specifically did not raise this challenge in its initial Rule 50
3  motion.  Given that EID failed to raise this argument in its
4  initial Rule 50 motion, EID cannot raise this challenge for the
5  first time in its Rule 50(b) motion.  See Freund v. Nycomed
6  Amersham, 347 F.3d at 761 ("[a] party cannot raise arguments in its
7  post-trial motion for judgment as a matter of law under Rule 50(b)
8  that it did not raise in its pre-verdict Rule 50(a) motion.")

9  Accordingly, the court addresses only those damages which EID
10 contested in its initial Rule 50 motion.

11 **1.   Delay Damages After Hole Through**

12 At trial, TBI sought damages for delays after hole through.
13 TBI presented substantial evidence to support the jury's award of
14 damages.  Specifically, the testimony of Mr. Robert Taylor
15 established that the total costs incurred by TBI for 181 days of
16 delay was $1,776,935. (TT 3668:18-21).  Mr. Taylor explained that
17 based on a review of TBI's costs, TBI's daily cost of operations
18 was $9,817 ($1,776,935 divided by 181 days).  This included costs
19 for equipment rental, fuel costs, labor costs and other time
20 related costs. (TT 3668:18-3669:16).

21 TBI also presented the testimony of Mark Johnson.  Mr. Johnson
22 also testified about the delays post-hole through.  Mr. Johnson
23 discussed the following events which delayed TBI's completion: (1)
24 stop work order regarding corrections to the misalignment (TT
25 3497:10-3498:6); (2) diversion wall or bulkhead stop work order (TT
26 3501:1-3503:4); and (3) sediment pond stop work order (TT

1   3503:5-3504:5).  Mr. Johnson opined that EID was responsible for

2   209 days of  delay arising from the diversion wall stop work order.

3   (TT 3513:12-23; 3530:1-3531:1).

4        In light of this testimony, there was sufficient evidence for

5   the jury to determine that TBI suffered damages associated with the

6   delay after hole through.[1]

7        **2.   Decant Slab Delay Damages**

8        There was sufficient evidence of the decant slab delay to

9   support the jury's award of damages.  First, the Dispute Review

10  Board unanimously decided that EID was solely responsible for any

11  delay caused to TBI as a result of the construction of the Decant

12  Slab and that such delay was a "Compensable Delay" pursuant to the

13  Contract.   (Trial Exhibit 402, page 7).   Second, Mr. Mitter

14  specifically testified to damages regarding the decant slab. (TT

15  3010:22 -3011:10; TT 3010:13-14; TT 3015:4-3016:3).   Mr. Greg

16  Cangelosi also testified that trial exibit 309 relfected that the

17  cost of the decant slab delay was $234,860.  (TT 3591:4-12; TT

18  3591:6-17).  Finally, Mr. Taylor testified that TBI had in fact

19  incurred  costs  with  respect  to  the  decant  slab.      (TT

20

21

22  _____

23       [1]  It is impossible to know the amount the jury awarded for
    each category of damages.  TBI requested that the jury award a
    total of $6,578,817, and the jury awarded $6,264,312, which was
24  $314,505 less than the requested amount.  The general verdict form
    did not reveal which categories of damages the jury apparently
25  found lacking in evidence.  EID did not object to the jury verdict
    form.

26

1  3687:15-3688:3;  TT  3664:15-3665:3).[2]   In  short,  there  was
2  sufficient evidence to support the jury's verdict.

3      **3.  Consumptive Water Line Damages**

4      TBI  also  sought  damages  for  delays  associated  with  EID's
5  request  that  the  consumptive  water  line  design  be  prepared  by  a
6  licensed engineer.  Again, there was ample evidence to support the
7  jury's damages award.

8      John McDonald testified that TBI experienced a 22 to 27-day
9  delay as a result of EID's request for an engineered plan for the
10 consumptive water line. (TT 1349:16-21) He also testified that the
11 cost  to  TBI  for  URS'  work  in  redesigning  the  water  line  was
12 approximately $30,000. (TT 1473:16-18)

13     Moreover,  trial  exhibit 309 included a claim for "consumptive
14 water  system  delay"  in  the  amount  of  $340,292.   Mr.  Taylor
15 testified  that  TBI  did  in  fact  incur  costs  associated  with  the
16 consumptive water delay.  (TT 3662:21-3664:14).[3]

17     **4.  Sedimentation Pond Damages**

18     TBI sought damages for extra work related to cleaning up the
19 sedimentation pond.  Ample evidence was presented to the jury on

20 ───────────────

21     [2] The  parties  contest  whether  or  not  certain  exhibits  that
    were never marked into evidence can, nonetheless, be incorporated
22  as evidence through testimony.  Even if the court were to conclude
    that these exhibits could not be construed as evidence, there is
23  still sufficient admitted evidence which supports the jury's award
    of damages.

24     [3] Again,  the  parties  contest  whether  or  not  the  court  can
    consider trial exhibits which were not admitted as evidence.   As
25  with the decant slab, when the court examines just the admitted
    evidence,  it  is  clear  that  TBI  submitted  sufficient  evidence  to
26  support the jury's verdict.

1  this point.  Greg Cangelosi testified that TBI developed and

2  implemented a procedure to clean up the sedimentation pond area

3  that was eventually accepted by EID and MWH. (TT 3567:23-3575:20)

4  He explained that TBI tracked its costs associated with the

5  sedimentation pond area using Time and Materials sheets.  The Time

6  and Materials sheets were then used to create additional spread

7  sheets for labor, equipment and materials costs. (TT

8  3575:21-3577:24)

9      Mr. Cangelosi was also involved in the preparation of Trial

10  Exhibit 309. (TT 3591:4-12).  The "Final Estimate" sheet (page

11  EID26 03687) in Trial Exhibit 309 represents work that was

12  completed by TBI. (TT 3593:2-8).  According to Exhibit 309, TBI

13  incurred $177,139.76 in clean up costs for the sedimentation pond.

14  (TT 3594:1-13).  Mr. Taylor also testified that TBI incurred costs

15  associated with sedimentation pond clean up. (TT 3667:2-14).  In

16  sum, there is ample evidence to support the jury's damages award.

17      **5.  Other Potential Change Orders**

18      TBI also sought damages for various potential change orders

19  that were never paid by EID.  Substantial evidence was presented

20  as to these damages as well.

21      Mr. Cangelosi testified generally about various work for which

22  TBI was never paid. (i.e.: TBI installed a tunnel entry protection

23  grate and a diversion wall.) See TT 3586:10-3590:22; TT

24  3596:5-3598:7.  According to Trial Exhibit 309, the "Final

25  Estimate" (EID26 03687) includes a section for "Potential Change

26  Orders" that includes a series of items that total $235,902.91.

7

1  Subtracting the amount for the sedimentation pond clean up

2  ($177,139.76) which has already been addressed, the remainder

3  totals $58,763.15.  It appears that there was ample evidence for

4  the jury to award damages on these grounds.

5      **6.   Escalation of Labor and Power Costs**

6      TBI sought damages for the escalation of labor and power costs

7  associated with the delay in the project.  Trial exhibit 309 makes

8  multiple mention of the damages related to the escalation of labor

9  and power.   For example, the cover letter to TBI's Final

10  Application for Payment references TBI's claim for, among other

11  things, "escalations." (EID26 03679) and the "Pay Summary"

12  indicates a claim for $254,281 for "Escalation of Salaries and

13  Power." (EID26 03682).

14      Mr. Taylor also testified that he reviewed TBI's claim for

15  escalation of labor and power costs to determine if these were

16  actual costs incurred by TBI. (TT 3669:18-3670:2)  The review was

17  to see if there was a difference in labor costs and utility power

18  surcharges due to the passage of time while the project was

19  delayed. Mr. Taylor testified that TBI did in fact incur labor and

20  power costs associated with the delay.

21      **7.   Extra Environmental Costs**

22      Lastly, TBI sought damages for extra environmental costs

23  associated with work performed by Mr. John McDonald.  Mr.  McDonald

24  testified that EID agreed to pay certain costs for Mr. McDonald to

25  take over an environmental consultant position and then refused to

26  pay these costs. (TT 1252:2-1253:19, 1431:8-1432:4;  1434:3-18;

1435:20-1436:16).  He testified that the position of environmental safety officer was not in the original contract. (TT 1434:19-1435:4)   Mr. McDonald performed the work of an environmental safety officer for approximately 10% of his time from January through August 2002. (TT 1481:5-11; 1491:13-1492:14.)  Mr. McDonald compiled his costs for this work and gave it to EID's construction manager. (TT 1437:3-11).

Mr. Taylor testified that he reviewed detailed records on material costs, subcontract costs, labor charges and equipment usage for the project.  Mr. Taylor also reviewed back up and supporting information and contracts.  (TT 3649:4-23)  Mr. McDonald's work was included in the costs incurred calculation. (TT 3675:4-9; 3674:5-3675:3).

In sum, TBI presented ample evidence to support the jury's damages award.  It cannot be said that when the evidence is construed in the light most favorable to TBI, it permits only one reasonable conclusion that is contrary to the jury's verdict.  See Air-Sea Forwarders, Inc. v. Air Asia Co., 880 F.2d 176, 181 (9th Cir. 1989).  Accordingly, EID's Rule 50(b) Motion with respect to damages is DENIED.

## II.

### TBI's Supplemental Motion for Attorneys Fees

TBI and Travelers seek an additional $228,531.00 in attorneys' fees for work related to the parties' post-trial motions.[4]   EID

---

[4]  TBI and Travelers originally sought $230,233.82, but defendants reduced this amount based on errors in their

1   contends that the present motion should be denied in full due to

2   its overreaching nature.   Alternatively, EID requests that the

3   court reduce the amount requested by $111,434.32.   EID objects to

4   various requests on the grounds that the fees are neither

5   reasonable nor necessary.   The court addresses each of EID's

6   objections in turn.[5]

7   **A.   EID's Objections TO TBI's Requests for Attorneys' Fees**

8           **1.           Fees for Work Completed by Steven Owen**

9           EID argues that TBI is not entitled to any attorneys' fees

10  incurred by Mr. Steven Owen, TBI's in-house counsel.   EID basis its

11  argument on the court's previous ruling that TBI could not recover

12  for the hours Mr. Owens worked as a client representative.   Feb.

13  12, 2007 Order 12:9-14.   Accordingly, EID asks that the court

14  reduce TBI's award by $27,720 (79.2 hours at a rate of $350/hr).

15          The court agrees the TBI is not entitled to recovery for those

16  hours Mr. Owens worked as a client representative.   Although TBI

17  claims that all of Mr. Owen's post-trial hours constitute legal

18  work, simply labeling the work as "legal" is insufficient.   That

19  said, Mr. Owen did submit an affidavit that set forth the various

20  legal tasks he undertook.   Accordingly, the court deducts

21  $13,860.00 (this is half of the amount requested for Mr. Owen) from

22  TBI's total award of attorneys' fees.

23

24  calculations. <u>See</u> Def.'s Reply to Plt.'s Oppo. pp. 9-10.

25          [5]   The court incorporates by reference the section on
    applicable law in its February 12 Order. <u>See</u> Feb. 12, 2007 Order
26  5-6.

1     **2.**            **Fees Related to EID's Rule 50(b) Motion**

2     EID objects to TBI recovering fees for any labor spent on

3 TBI's supplemental brief regarding EID's rule 50(b) motion. EID

4 claims that TBI failed to diligently prepare its original brief,

5 and, as such, should not recover for time spent on the supplemental

6 brief.

7     Given that the court specifically requested that TBI file a

8 supplemental brief, it seems reasonable to award attorneys' fees

9 for the additional work. Accordingly, the court will disregard

10 EID's objection.

11     **3.**            **Fees for Preparing Motions for Attorneys' Fees**

12     EID argues that TBI spent an exorbitant amount of time

13 preparing the motions for attorneys' fees. TBI spent a total of

14 227.5 hours preparing the attorneys' fees motions. Of those, 206.6

15 hours were for attorney time. The court is inclined to agree that

16 collecting attorneys' fees for these hours is excessive. (As one

17 example, Ms. Ljungdahl apparently spend 55.8 hours researching

18 market rates for attorney fees in Sacramento and San Francisco.)

19     EID asks that the court reduce the award by $28,878.50. This

20 amount represents a portion of the time that TBI spent preparing

21 the motions for attorneys fees. The court agrees and the total

22 award amount will be reduced accordingly.

23     **4.**            **Fees for the Unsuccessful Prejudgment Interest**

24                    **Motion**

25     EID argues TBI should not receive fees for preparing its

26 unsuccessful motion for prejudgement interest. The court

1  disagrees.  A prevailing party is entitled to compensation for all
2  hours reasonably spent on the litigation. <u>Serrano v. Unruh</u>, 32 Cal.
3  3d 621, 639 (1982).  Moreover, recovery does not hinge upon the
4  success or failure of a particular motion.  <u>See</u>, <u>e.g.</u>, <u>Monroe v.</u>
5  <u>United Air Lines, Inc.</u>, 565 F. Supp. 274, 286 (N.D. Ill. 1983)
6  (party entitled to recover fees for unsuccessful motion for a
7  preliminary injunction where motion was based on identical facts
8  and legal theories that underpinned their ultimate success on the
9  merits).  Therefore, TBI may recover for its time spent working on
10 the prejudgment interest motion.  For this reason, the court will
11 not deduct any attorneys' fees related to work on that motion.

12      **5.        Fees Related to Appellate Work**

13     EID argues that TBI cannot recover attorneys' fees for work
14 completed by the firm Heller Ehrman because TBI retained the firm
15 after judgment was entered, in part to preserve issues for appeal.
16 EID asks the court to reduce TBI's award by $12,123.82.

17     Although TBI retained Heller Ehrman after judgment was
18 entered, the record shows that the firm spent a reasonable amount
19 of time researching EID's Rule 50(b) motion, which is one of the
20 post-trial motions for which TBI seeks recovery of attorneys' fees.
21 <u>See</u> Supp. Decl. of Leanord J. Feldman in Supp. of Def.'s Mot. for
22 Award of Att'ys' Fees. The work does not appear to be appellate in
23 nature.  As such, the court will not deduct from the attorneys'
24 fees award for work completed by Heller Ehrman.

25 ////

26      **6.        Miscellaneous Work**

EID asserts that numerous tasks for which TBI billed should not be included in the award of attorneys' fees. The court agrees TBI should not recover attorneys' fees related to the following tasks: (1) completing media-related work ($655.50); (2) updating box-indexes ($2,681.00); (3) taking depositions for an unrelated matter ($576.00); (4) creating settlement and appeal strategies ($1,380.00); (5) working on strategies related to trial/verdict/juror comments ($355.00); and (6) preparing documents for offsite storage ($99.00). Accordingly, the court reduces the award in the amount of $5,746.50.

**B.   Final Calculation of Attorneys' Fees Award**

For the reasons explained above, the following amount is awarded as attorneys' fees:

| | | |
|---|---|---|
| **Amount Requested:** | $228,531.00 | |
| **Deductions:** | $13,860.00 | Work completed by Mr. Owens. |
| | $28,878.50 | Inefficiency in preparing motions for attorneys fees. |
| | $5,746.50 | Miscellaneous. |
| **Final Award:**   = | $180,046.00 | |

**III.**

**Conclusion**

For the reasons discussed herein, the court orders as follows:

1. EID's Rule 50(b) Motion regarding TBI's damages is DENIED.

2. TBI's Supplemental Motion for Attorneys' Fees is GRANTED in the amount of $180,046.00.

IT IS SO ORDERED.

DATED: April 12, 2007.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT